2012 Ark. App. 387

**ARMSTRONG REMODELING & CONSTRUCTION, LLC; Eric Armstrong and Gary Armstrong, Appellants**

v.

**Martin A. CARDENAS, Appellee.**

No. CA 11–1090.

Court of Appeals of Arkansas.

June 13, 2012.

Frank W. Booth, Booth Law Firm, PLC, Van Buren, for Appellants.

Brandon J. Harrison, Fort Smith, Ronald W. Metcalf, Ronald W. Metcalf, P.A., Fort Smith, for Appellee.

RAYMOND R. ABRAMSON, Judge.

Appellant Armstrong Remodeling and Construction, LLC (ARC), appeals from a judgment on a Crawford County jury's verdict in favor of appellee Martin Cardenas in the sum of $22,018.50. On appeal, ARC argues that the circuit court erred in (1) denying ARC's motion for a directed verdict, (2) denying ARC's motion in limine and allowing Cardenas to testify about the terms of the parties' agreement, and (3) refusing to give any of ARC's five proffered instructions. Eric Armstrong and Gary Armstrong, the members of ARC, were also sued individually, but were awarded summary judgment prior to trial. They appeal from the circuit court's denial of their motion for attorney's fees. We affirm.

## Background

Cardenas's house was damaged, if not destroyed, by fire in July 2009. He hired ARC to rebuild his home with modifications of an extra bedroom and bathroom for $118,889.66.[1] Cardenas moved back into the house before it was finished but after the city inspector had approved it. He then changed the locks on the house so that ARC could not enter to complete the work.

On April 20, 2010, Cardenas filed suit against Eric Armstrong and Gary Armstrong, individually. Eric and Gary filed separate answers to the complaint, each denying the material allegations. Cardenas later amended his complaint to add ARC, contending that the cost agreed on was $5,000 for demolition and $55,000 to rebuild. Cardenas also alleged that ARC failed to complete the repairs and negligently failed to comply with the oral contract. He also alleged poor workmanship and sought $62,669 for repairs and $100,000 punitive damages. Each defendant filed a separate answer to the amended complaint, denying the material allegations.

In January 2011, the Armstrongs filed separate motions for summary judgment stating that the agreement was between Cardenas and ARC. On June 14, 2011, the circuit court granted the Armstrongs' separate motions and dismissed them from the lawsuit.

On June 14, 2011, ARC filed a motion in limine to prevent Cardenas from testifying as to his understanding of the terms of the contract or items that Cardenas contended were defective or not finished prior to his signing a statement of completion in September 2009. The circuit court denied the motion, explaining that Cardenas could testify about the negotiations.

The case proceeded to a two-day trial before a jury. ARC moved for a directed verdict at the close of Cardenas's case on the basis that there was no evidence to support a negligence claim. The circuit court granted the motion as to the negligence claim. At the close of all of the

---

1. The document the parties refer to as a "contract" is actually an estimate dated July 21, 2009, which was signed by Cardenas. It was prepared prior to work beginning and lists various items of work or material and the price of those items.

proof, ARC moved for a directed verdict on the basis that it had substantially performed the agreement and that Cardenas had prevented it from completing its work. The court denied the motion. The court also refused all five of ARC's requested instructions. The jury returned a verdict that awarded Cardenas damages in the amount of $22,018.50. Judgment was entered for Cardenas on June 29, 2011.

On June 27, 2011, the Armstrongs filed separate motions under Ark.Code Ann. § 16–22–308, requesting the attorney's fees they incurred defending the suit up to the period when they were dismissed. On July 1, 2011, Cardenas filed his own motion for attorney's fees under Ark.Code Ann. § 16–22–308. On July 6, ARC filed a motion for judgment notwithstanding the verdict or new trial. On August 2, the circuit court entered three separate orders that denied the Armstrongs' separate motions for attorney's fees and ARC's motion for judgment notwithstanding the verdict or new trial. The court awarded Cardenas attorney's fees of $9,076 on August 3.[2] This timely appeal followed.

### |₄Sufficiency of the Evidence

ARC first challenges the sufficiency of the evidence to support the jury's verdict. Specifically, ARC argues that, because Cardenas admitted to barring ARC from completing its work, the jury failed to follow the circuit court's instructions that directed the jury to find for ARC if it determined that Cardenas had hindered or prevented ARC from performing its obligations under the parties' agreement.

Our standard of review of the denial of a motion for directed verdict is whether the jury's verdict is supported by substantial evidence. *Advanced Envtl. Recycling Techs. v. Advanced Control Solutions, Inc.*, 372 Ark. 286, 275 S.W.3d 162 (2008). Substantial evidence is that which goes beyond suspicion or conjecture and is sufficient to compel a conclusion one way or the other. *Id.* It is not this court's place to try issues of fact; rather, this court simply reviews the record for substantial evidence to support the jury's verdict. *Id.* In determining whether there is substantial evidence, we view the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf judgment was entered. *Id.*

According to Cardenas, he moved into the unfinished house on November 21, 2009, shortly after the final inspection by the building inspector. He said that he met with Eric Armstrong on December 16, 2009, to discuss the problems with the house. During that meeting, they discussed the fact that Cardenas had changed the locks to the house and padlocked the gate. Cardenas said that he had done so because he had some tools missing when he was at work and ARC's crew was at the house.

|₅Eric Armstrong agreed that Cardenas had moved in before the work was completed. He also said that he had tried two or three times to finish the work, but Cardenas had prevented this by changing the locks. Armstrong said that he told Cardenas during the December 16 meeting that he would send a crew out the next day to complete the work. He said that Cardenas told him not to complete the work because Cardenas would finish the work himself. Armstrong said that he only tried one more time to contact Cardenas to complete the work after that meet-

2. Although ARC's notice of appeal mentioned the award of attorney's fees to Cardenas, it has not argued the point on appeal.

ing. Armstrong stated that he went to Cardenas's home on December 30 to ask to be allowed to complete the work; again, Cardenas told him not to do so. He added that, although he stood ready to complete the work up until the time suit was filed, he never tried to contact Cardenas again.

A former ARC employee, Elmer Smith, testified that he was the person responsible for doing the finishing detail work on the house, but that he could not do so because the gate to Cardenas's house was locked. Smith said that he accompanied Eric Armstrong to Cardenas's home on December 30. He said that Cardenas told them that they did not have to complete the remaining work. On rebuttal, Cardenas denied telling Eric Armstrong or Smith not to finish their work.

■ ARC cites this court to a quotation from the supreme court's decision in *Harris v. Holder*, 217 Ark. 434, 230 S.W.2d 645 (1950):

> It is elementary that there is no breach of a contract where performance is prevented, or rendered impossible, by the conduct of the other party. It is also generally recognized that a defective performance of a building contract is excused where it is due to the acts of the owner or his representative, unless the contractor has not offered a substantial compliance with the contract.

217 Ark. at 439, 230 S.W.2d at 648 (citations omitted). However, the key to the present case is whether ARC offered substantial compliance with the agreement. ARC's argument ignores the fact that *Harris* requires it to show both that Cardenas prevented it from further work on the contract and that it had substantially performed its agreement. ARC argues only the first element: that the testimony of Cardenas and Eric Armstrong showed that Cardenas changed the locks and would not allow ARC to continue its work

entitles it to a judgment in its favor as a matter of law. ARC does not address the second element of whether there was sufficient evidence that it had substantially complied. The issue of substantial performance is a question of fact. *Roberts Contracting Co. v. Valentine–Wooten Rd. Pub. Facility Bd.*, 2009 Ark. App. 437, 320 S.W.3d 1; *Cox v. Bishop*, 28 Ark.App. 210, 772 S.W.2d 358 (1989).

■ Here, the jury was presented with ample evidence of ARC's noncompliance. Cardenas introduced a list of items from the invoice that ARC either had not completed or had completed improperly. There was also testimony and a report from Cardenas's expert, contractor Roger Ross, about the things that remained to be completed. Ross testified that ARC completed only one-third of the roof repairs. He also noted that ARC used vinyl siding to replace the aluminum siding damaged in the fire, but charged for aluminum siding. Ross estimated the cost of repairs at $22,018.50. Eric Armstrong did not dispute Ross's testimony, but instead argued that he was prevented from completing the work.

Thus, the jury was presented with evidence of ARC's alleged noncompliance and was entitled to determine whether ARC had substantially complied under the contract. Moreover, ARC alleged it was prevented from completing performance, which Cardenas denied. The resolution of this conflicting testimony was for the jury. *ConAgra Foods, Inc. v. Draper*, 372 Ark. 361, 276 S.W.3d 244 (2008). Therefore, we cannot say that the circuit court erred in denying the motion for directed verdict.

### *Denial of Motion In Limine*

For its next point, ARC argues that the circuit court erred in denying its motion in limine seeking to exclude parol evidence

concerning the terms of the parties' agreement.

 When a motion in limine is made, the proponent of the evidence has the burden of showing that the evidence is admissible. *Benson v. Shuler Drilling Co., Inc.,* 316 Ark. 101, 871 S.W.2d 552 (1994). On review, we will not reverse a circuit court's ruling allowing or disallowing evidence on the basis of the parol-evidence rule absent an abuse of discretion. *Schueck v. Burris,* 330 Ark. 780, 957 S.W.2d 702 (1997). The parol-evidence rule is a rule of substantive law in which all antecedent proposals and negotiations are merged into the written contract and cannot be added to or varied by parol evidence. *Hagans v. Haines,* 64 Ark.App. 158, 984 S.W.2d 41 (1998). The parol-evidence rule applies only to written documents that the parties intended as a final and complete expression of their agreement. *See Rainey v. Travis,* 312 Ark. 460, 850 S.W.2d 839 (1993); *Farmers Co-op. Ass'n, Inc. v. Garrison,* 248 Ark. 948, 454 S.W.2d 644 (1970).

 Here, the document at issue does not contain a merger clause—an indication that the parties did not intend for the invoices to be their complete agreement. Eric Armstrong testified that his practice was not to have formal contracts, but rather to have an estimate or an invoice. He also said that Cardenas changed several items on the invoices, but that he did not get any written change orders. Armstrong admitted that he told Cardenas that it would cost $5,000 for the demolition and $55,000 for the construction of a new house. He then went on to say that that price was for an 800 square foot house, while there was a different price for a different house. This testimony indicates that there was some ambiguity as to what the parties' agreement encompassed. Parol evidence is admissible if there is an ambiguity. *Garrison, supra.* The circuit court, therefore, did not err in denying ARC's motion to exclude parol evidence.

### Jury Instructions Issues

Under this heading, we address ARC's arguments concerning the circuit court's refusal to give any of its five requested jury instructions. Those instructions are as follows:

### PROFFERED INSTRUCTION NO. *1*

#### Contract Price

You are instructed that the Court finds the original contract price agreed to by the parties was $118,889.66.

### PROFFERED INSTRUCTION NO. *2*

#### Contract—Substantial Performance

The Defendant is entitled to payment upon proof of "substantial performance" of the work Defendant contracted to accomplish. It is not necessary that Defendant fully and completely perform every item specified in the plans and specifications which are a part of the contract. The term "substantial performance" means that degree of performance of a contract which, while not full and complete performance, is so nearly equivalent to what was bargained for that it would be unreasonable to deny the Defendant the payment agreed upon, subject, of course, to the Plaintiff's right to recover whatever damages he has suffered by reason of the Defendant's failure to render full and complete performance.

### PROFFERED INSTRUCTION NO. *3*

#### Contract—Excuse from performance

If you find that the Defendant "substantially performed" the construction portion of the work, but also find that

the Plaintiff sustained damages by reason of a failure of full and complete performance by the Defendant, you will then consider the issue of whether the Defendant, as it contends, was in fact "prevented" by the Plaintiff from fully and completely performing the work.

On this issue you are instructed that, when two parties enter into a contract, each become obligated under the law to permit the other to perform his part of the bargain without interference; that is, each party must reasonably avoid any action which would effectively hinder, obstruct or prevent the other party from undertaking or completing whatever he agreed to do.

So, in this case, if you find from a preponderance of the evidence that the Defendant (including Defendant's subcontractors) was ready, willing and able to perform its contractual obligations but the Plaintiff did something which effectively hindered, obstructed and prevented the Defendant from so doing, then the Plaintiff cannot recover damages for that failure because he, himself, became charged under the law with responsibility for it.

### PROFFERED INSTRUCTION NO. 4

You are instructed that one is bound under the law to know the contents of a paper signed by him and he cannot excuse himself by saying he did not know what it contained.

### PROFFERED INSTRUCTION NO. 5

You are instructed to disregard prior or contemporaneous agreements of the parties that would vary the express terms of their agreement.

The circuit court refused each of the instructions with the statement that the instructions it intended to give properly reflected the law and were based on the evidence in the case.

A party is entitled to a jury instruction when it is a correct statement of the law and when there is some basis in the evidence to support giving the instruction. *Barnes v. Everett*, 351 Ark. 479, 95 S.W.3d 740 (2003). We will not reverse a circuit court's failure to give an instruction unless the court abused its discretion. *See Belz–Burrows, L.P. v. Cameron Constr. Co.*, 78 Ark.App. 84, 78 S.W.3d 126 (2002). When a model instruction is applicable in a case, it shall be used unless it does not accurately state the law. *See, e.g., Taylor v. Riddell*, 320 Ark. 394, 896 S.W.2d 891 (1995). Jury instructions are not to be viewed in isolation but are to be considered as a whole to determine whether the circuit court correctly instructed the jury. *McGraw v. Weeks*, 326 Ark. 285, 930 S.W.2d 365 (1996); *Long v. Lampton*, 324 Ark. 511, 922 S.W.2d 692 (1996).

ARC first argues that the circuit court erred in failing to give its Proffered Instruction No. 1. That instruction told the jury that "the Court finds the original contract price agreed to by the parties was $118,889.66." ARC argues that the court's failure to give this instruction was an abdication of the court's duty to construe an unambiguous contract between the parties.

ARC argues that the circuit court abused its discretion by not giving its proffered instruction but does not explain how. Instead, its argument appears to be that there was evidence to support the giving of the instruction; the court did not give the instruction; and, therefore, the court erred, requiring reversal. An abuse of discretion is a high threshold that does not simply require error in the circuit court's decision, but requires that the circuit court acted improvidently, thoughtlessly, or without due consideration. As noted above in the dis-

cussion of ARC's point on the parol-evidence rule, it was admitted that Cardenas was told that it would cost $5,000 for the demolition and $55,000 for the construction of a new house. Eric Armstrong went on to say that that price was for an 800–square–foot house, while there was a different price for a different house. We find no abuse of discretion in failing to instruct the jury as to the price of an ambiguous agreement.

The circuit court's failure to give ARC's Proffered Instruction No. 5, concerning the parol-evidence rule, is the subject of ARC's next point. For the reasons discussed above in ARC's second point, the court did not err in refusing to instruct the jury on the rule.

The third argument concerning jury instructions is that the circuit court erred in failing to give ARC's Proffered Instruction No. 4, stating that a party to a written contract is bound to know the contents of that writing. There is no Arkansas model instruction on this point.

However, the circuit court did not err in failing to give ARC's proffered instruction because it only states an abstract proposition of law, which should not be given. *Parker v. Holder*, 315 Ark. 307, 867 S.W.2d 436 (1993). ARC argues that there is testimony to support the giving of this instruction. The testimony ARC cites is Cardenas stating that he only signed a draft from the insurance company and the statement of satisfaction and completion. He stated nothing about the "contract" at issue in the cited testimony. Usually, this type of instruction is given if the *defendant* is trying to avoid the obligations of a written document he did not read, not the plaintiff trying to enforce the obligations of a contract. *See Stone v. Prescott Special Sch. Dist.*, 119 Ark. 553, 178 S.W. 399 (1915); *Colonial & U.S. Mortg. Co. v. Jeter*, 71 Ark. 185, 71 S.W. 945 (1903). More-

over, ARC does not explain how it was prejudiced by the failure to give this proffered instruction. It was required to show that the circuit court abused its discretion by failing to give the requested instruction. *S. Farm Bureau Cas. Ins. Co. v. Daggett*, 354 Ark. 112, 118 S.W.3d 525 (2003); *Barnes, supra*. It has not done so.

ARC next argues that the circuit court erred in failing to give its Proffered Instruction No. 2 concerning substantial performance. ARC proffered an instruction based on a federal pattern instruction. ARC's argument can be viewed in two ways.

First, if the argument is that the circuit court erred in failing to give ARC's proffered instruction, there is no error because there is an Arkansas model jury instruction dealing with substantial performance—AMI Civ. 2428. Even where a proffered instruction accurately reflects the case law, the failure to give the instruction is not error when an AMI instruction covering the same subject matter is on point, due to our longstanding preference in favor of AMI instructions over non-AMI instructions. *Wal–Mart Stores, Inc. v. Kelton*, 305 Ark. 173, 806 S.W.2d 373 (1991). It is, therefore, not error to deny a proffered instruction if the subject is covered by the model instructions. *Ferrell v. S. Farm Bureau Cas. Ins. Co.*, 291 Ark. 322, 724 S.W.2d 465 (1987); *Wharton v. Bray*, 250 Ark. 127, 464 S.W.2d 554 (1971).

On the other hand, if ARC's argument is that the circuit court failed to give *any* instruction on substantial performance, the issue is waived because it failed to proffer AMI Civ. 2428 or specifically object to the failure to instruct on this issue. If the court has failed to give an instruction on an issue, Arkansas Rule of Civil Procedure 51 expressly requires both

an objection and submission of a proposed instruction. *Peoples Bank & Trust Co. v. Wallace*, 290 Ark. 589, 721 S.W.2d 659 (1986). In its reply brief, ARC argues that the issue is preserved because it proffered the federal pattern instruction. That is not sufficient because AMI Civ. 2428 is directly on point. ARC did not argue that, if the circuit court did not give ARC's proffered instruction, the court should have given AMI Civ. 2428 as an alternative.

ARC's last issue concerning the jury instructions is that the circuit court erred in failing to give its Proffered Instruction No. 3 concerning excuse from performance. This instruction was also based on a federal pattern instruction. Instead, the circuit court instructed the jury using AMI Civ. 2441. As with the previous point, it is not error to refuse to give a non-AMI instruction if there is an AMI instruction on point. *Ferrell, supra.*

### Attorney's Fees

Finally, we address the arguments Eric and Gary Armstrong make that the circuit court erred in denying their motions for attorney's fees after they were granted summary judgment on Cardenas' breach-of-contract claim against them.

Arkansas Code Annotated section 16–22–308 (Repl.1999) gives the circuit court authority to award attorney's fees in contract actions and provides in pertinent part:

> In any civil action to recover on … breach of contract, unless otherwise provided by law or the contract which is the subject matter of the action, the prevailing party may be allowed a reasonable attorney's fee to be assessed by the court and collected as costs.

The supreme court has indicated that fees under section 16–22–308 are for parties who prevail on the merits of a case. *Marcum v. Wengert*, 344 Ark. 153, 40 S.W.3d 230 (2001). A successful defendant in a contract action may be considered a "prevailing party" for the purposes of Ark. Code Ann. § 16–22–308. *See, e.g., Marcum, supra; Dawson v. Temps Plus, Inc.,* 337 Ark. 247, 987 S.W.2d 722 (1999); *Marsh & McLennan of Ark. v. Herget,* 321 Ark. 180, 900 S.W.2d 195 (1995). However, we have construed "prevailing party" in terms of the entire case and not in terms of particular issues or actions therein. *Perry v. Baptist Health,* 368 Ark. 114, 243 S.W.3d 310 (2006). While the Armstrongs were granted summary judgment on the claims against them individually, Cardenas ultimately recovered a judgment against ARC. Therefore, Cardenas was the "prevailing party" in terms of the entire case, and the circuit court did not err in denying the Armstrongs' motions for attorney's fees. *Marcum, supra.*

Affirmed.

GLOVER and HOOFMAN, JJ., agree.