2012 Ark. App. 702
**GROSS & JANES COMPANY and Charles Harris, Appellants**

v.

**Cedric BROOKS, Appellee.**

**No. CA 12–139.**

Court of Appeals of Arkansas.

Dec. 12, 2012.

Kutak Rock, LLP, Fayetteville, by: Mark W. Dossett; Larkowski and Rogers, by: Gill A. Rogers, Little Rock, for appellants.

Chaney Law Firm, P.A., by: Don P. Chaney, Arkadelphia, Nathan P. Chaney, and S. Taylor Chaney, Arkadelphia, for appellee.

DAVID M. GLOVER, Judge.

Charles Harris and his employer, Gross & Janes Co. (collectively, Gross), appeal from a jury verdict awarding appellee Cedric Brooks damages for injuries he suffered in an automobile accident. In four points, Gross argues that the circuit court erred in allowing the introduction of certain evidence concerning Brooks's claims for future medical expenses, loss of earning capacity, and his need for in-home-care expenses, in denying its motion for directed verdict on those claims, and in instructing the jury on those claims. We affirm.

On September 11, 2006, Harris was driving a vehicle owned by Gross when he collided with a delivery truck in which Brooks was riding. Brooks filed suit on September 9, 2009, alleging negligence on the part of Gross. In addition to damages for permanent bodily injuries, Brooks also sought damages, both past and future, for, inter alia, medical expenses, pain and suffering, loss of income, mental anguish, and loss of earning capacity.

On October 7, 2011, three days before trial was to begin, Gross filed a motion seeking to exclude certain evidence or, in the alternative, a continuance. The motion asserted that Brooks had undergone an

MRI on October 3, 2011, and Gross did not receive a copy of the report until October 6. The motion further asserted that Brooks informed Gross on the morning of October 7 that he was claiming an additional $200,000 in future medical expenses and that Gross's medical experts would be unavailable to review this new information until October 9, the day before trial.

In a response filed the morning of trial, Brooks argued that Gross had been dilatory in turning over reports from its medical experts, as well as in disclosing certain experts.[1] Brooks also asserted that the October 3 MRI was necessary to follow up on the conditions found in a June 2009 MRI. Brooks asked the court to deny Gross's motion on the basis that Gross was not prejudiced. In the alternative, Brooks asked the court to exclude the testimony and reports of Drs. Peeples and Henry.

Following a hearing immediately prior to trial addressing both Gross's motion to exclude the most recent MRI and evidence of future medical expenses and Brooks's motion to exclude Dr. Peeples's testimony, the court excluded the evidence concerning the MRI, but denied the motion as to evidence of future medical expenses. The court also granted a motion to exclude a report by Gross's expert, but denied the motion to exclude Dr. Peeples's testimony.

The case went to trial on the issue of damages over three days. Eleven of the twelve members of the jury agreed to a general verdict that awarded Brooks $540,000 in damages. Judgment on the jury's verdict was entered on October 25, 2011. This appeal followed.

Gross argues four points on appeal: (1) the circuit court erred in denying its mo-

tion to exclude evidence of Brooks's future medical expenses; (2) the circuit court erred in denying its motion to exclude evidence of Brooks's loss of earning capacity and his need for in-home assistance; (3) the circuit court erred in denying its motion for directed verdict on Brooks's claim for loss of earning capacity and his need for in-home assistance, and (4) the circuit court erred in instructing the jury on Brooks's claim for loss of earning capacity and his need for in-home assistance.

Gross first argues that the circuit court erred by not excluding evidence that Brooks was seeking additional damages for future medical expenses that was not, according to Gross, disclosed to Gross until the week before trial. On appeal, we will not reverse a circuit court's ruling on the admission of evidence absent an abuse of discretion, nor will we reverse absent a showing of prejudice. *See Grummer v. Cummings,* 336 Ark. 447, 986 S.W.2d 91 (1999); *Edwards v. Stills,* 335 Ark. 470, 984 S.W.2d 366 (1998).

Gross relies on our decision in *Battles v. Morehead,* 103 Ark.App. 283, 288 S.W.3d 693 (2008), for its argument. That reliance is misplaced. In *Battles,* a personal-injury case tried solely on the issue of damages, the plaintiff testified about his recent treatment by a doctor that was not revealed in the plaintiff's discovery responses and was unknown to the plaintiff's own attorney. We reversed and remanded for a new trial, noting that the plaintiff's failure to supplement deprived the defendant of the opportunity to formulate his defense on the key issues and to prepare for trial.

In the present case, the dispute is not over undisclosed treatments or injuries,

---

1. One of the experts that Brooks asserted had not been timely disclosed was Dr. Earl Peeples. Brooks also alleged that Gross had re-

ceived a report from Dr. Ty Henry on May 26, 2011, but did not disclose the report until the eve of trial.

but over amounts of future medical expenses. Brooks had set forth his claim for future medical expenses in his complaint. He had also disclosed both the amounts of his past medical expenses, as well as future medical expenses that another doctor had estimated to be approximately $38,000. During discovery, Gross took the deposition of Dr. Stephen Bennett, who testified that Brooks would require future treatments for the rest of his life due to the permanent nature of the injury. However, Bennett was not asked about the cost of future treatments. At trial, Bennett testified that treatments cost between $90 and $160, depending on the services performed. In addition, Bennett testified that Brooks would need follow up x-rays and MRIs at approximately five-year intervals. Bennett estimated the cost of an x-ray at $120 and said that MRIs ranged between $1,800 from $2,400. During closing arguments, Brooks's attorney restated Bennett's figures to the jury and extrapolated those figures to range from $161,000 to $252,000 for future medical expenses, $1,300 for future x-rays, $12,600 for MRI for Brooks's remaining life expectancy of thirty-five years. After discussing other elements of damages, counsel suggested a total award of $741,700 for all elements of damages.

We cannot say that Gross was prejudiced by Brooks's failure to disclose the exact amount of future medical expenses he was seeking. First, future medical expenses need not be proved with the same specificity as past medical expenses. *Matthews v. Rodgers*, 279 Ark. 328, 651 S.W.2d 453 (1983). Brooks had disclosed both the amounts of past medical expenses, as well as future medical expenses. No one asked Dr. Bennett to calculate potential future expenses. Second, Gross failed to ask for a continuance to meet this evidence. At the hearing on the motion, Gross's attorney acknowledged that he had received the updated medical bills in the middle of September, but said that this was the first indication he had that Brooks had been receiving weekly treatments. Gross should have anticipated testimony on Brooks's future medical expenses and its failure to do so shows a lack of prejudice. *See Arkansas State Hwy. Comm'n v. Lewis*, 243 Ark. 943, 422 S.W.2d 866 (1968). This is part of the basis given by the circuit court in denying Gross's motion to prevent Brooks from testifying as to his future medical expenses. Finally, the case was submitted to the jury on a general verdict. We cannot know how much, if any, the jury awarded on this claim. As a result, Gross cannot show that it was prejudiced by this evidence.

We combine Gross's second, third, and fourth points because they relate to the same issue—Brooks's loss of earning capacity and his need for in-home care. The three points are that the circuit court erred in (1) denying its motion to exclude evidence of Brooks's claims for loss of earning capacity and the need for in-home assistance; (2) denying its motion for directed verdict because there was no substantial evidence to support Brooks's claims, and (3) instructing the jury on those claims because there was no evidence to support them.

Our standard of review of the denial of a motion for directed verdict is whether the jury's verdict is supported by substantial evidence. *Armstrong Remodeling & Constr., LLC v. Cardenas*, 2012 Ark. App. 387, 417 S.W.3d 748. Substantial evidence is that which goes beyond suspicion or conjecture and is sufficient to compel a conclusion one way or the other. *Id.* It is not this court's place to try issues of fact, rather, this court simply reviews the record for substantial evidence to support the jury's verdict. *Id.* In determining

whether there is substantial evidence, we view the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf judgment was entered. *Id.*

■ A party is entitled to a jury instruction when it is a correct statement of the law and when there is some basis in the evidence to support giving the instruction. *Source Logistics, Inc. v. Certain Underwriters at Lloyd's of London,* 2010 Ark. App. 239, 374 S.W.3d 232. Moreover, this court will not reverse a circuit court's decision to give or reject an instruction unless there was an abuse of discretion. *Id.* A circuit court abuses its discretion by acting thoughtlessly and without due consideration. *Id.*

■ Gross first argues that the circuit court erred in denying its motion to exclude evidence supporting Brooks's claim for loss of earning capacity on the basis that, during opening statements, Brooks's attorney provided the jury with figures to support the claim but had failed to disclose those figures to Gross during discovery. In other words, Gross is claiming that it was surprised by these figures.

■ In its brief to this court, Gross argues that Brooks had not disclosed the figures in response to discovery requests seeking an itemization of Brooks's damages. It also seeks to incorporate its arguments concerning Brooks's failure to supplement his discovery responses made in its first point. However, Gross did not make this specific argument below, it simply argued that the first time it learned of these particular numbers was during opening statements. We do not consider arguments raised for the first time on appeal. *Boellner v. Clinical Study Ctrs., LLC,* 2011 Ark. 83, 378 S.W.3d 745. A party cannot change the grounds for an objection or motion on appeal, but is bound by the scope and nature of the arguments made at trial. *Yant v. Woods,* 353 Ark. 786, 120 S.W.3d 574 (2003).

■ Gross next argues that the circuit court erred by denying its motion for a directed verdict on the claim for loss of earning capacity because the evidence showed that Brooks's earning capacity had not been impaired, rather, it had increased because Brooks was employed at a job earning more than he did at the time of the accident. Loss of earning capacity is the permanent diminution of the ability to earn money. *Edwards, supra,* The impairment of the capacity to earn is the gravamen of the element. *Id., see also* Woods, *Earnings and Earning Capacity as Elements of Danger in Personal Injury Litigation,* 18 Ark.L.Rev. 304 (1964). The fact that the plaintiff is earning more than at the time of the injury is a factor to be considered, but does not preclude recovery for loss of earning capacity. *See Ward Body Works, Inc. v. Smallwood,* 227 Ark. 314, 298 S.W.2d 332 (1957); *Bochar v. J.B. Martin Motors, Inc.,* 374 Pa. 240, 97 A.2d 813, 815 (1953). Proof of loss of earning capacity does not require the same specificity or detail as does proof of loss of future wages. *Arthur v. Zearley,* 337 Ark. 125, 992 S.W.2d 67 (1999). If there is proof of permanent disability, this element of damages may be submitted to the jury even in the absence of specific evidence of pecuniary loss due to inability to earn in the future. *Edwards, supra, Gipson v. Garrison,* 308 Ark. 344, 824 S.W.2d 829 (1992). A numerical "impairment rating" is not essential to recovering for loss of earning capacity. *Wheeler v. Bennett,* 312 Ark. 411, 849 S.W.2d 952 (1993). In the absence of direct proof of the value of the diminished capabilities, the probable diminution of earning capacity may be inferred from the nature of the injuries. *Bill Davis*

*Trucking, Inc. v. Prysock*, 301 Ark. 387, 784 S.W.2d 755 (1990).

Although Gross acknowledges that Brooks offered evidence of his permanent injury and that he had been given a "permanent impairment rating" of 20%, it argues that Brooks may not rely solely on permanency of the injury to establish the loss of future earning capacity. This is because, according to Gross, it would merely be duplicative of the claim for permanent injury. However, Arkansas law does not require such proof. In *Gipson*, the Arkansas Supreme Court upheld an award for loss of earning capacity, based upon evidence that the plaintiff had suffered a five-percent disability and was forced to forego her career as an interior designer and to liquidate her business. 308 Ark. at 348–49, 824 S.W.2d at 832. Similarly, in *Coleman v. Cathey*, 263 Ark. 450, 453–54, 565 S.W.2d 426, 428–29 (1978), the court held as adequate to support an award of damages for loss of earning capacity the plaintiff's testimony that he had lost the ability to coach college basketball, notwithstanding the fact that there was no evidence that he was earning less than he had been when he was terminated from his coaching position.

 Here, it is undisputed that Brooks was given an impairment rating of approximately 20%. In addition, Brooks testified that he could no longer do his former job as a Pepsi deliveryman because it required heavy lifting. He also could not ride in a vehicle for long hours riding. Brooks further testified that he had restricted himself from lifting, pushing, or pulling because those activities aggravate his injury. There was also testimony that he could no longer assist in a lawn-care business except by driving. Additionally, there was testimony that, after the accident, Brooks was no longer able to perform handyman chores for his family members. Similar evidence has been allowed as tending to show a loss of earning capacity. *See Haney v. Noble*, 250 Ark. 557, 560, 466 S.W.2d 467, 469 (1971). This is substantial evidence showing a permanent injury to support this claim.

 Finally under this point, Gross argues that the circuit court erred in instructing the jury on the loss of earning capacity claim because there was no evidence to support the amount suggested by Brooks's attorney. Because we have determined that there is substantial evidence to support the loss of earning capacity claim, the circuit court did not err in instructing the jury on that claim. *Source Logistics, supra*. Brooks was not required to submit evidence of specific pecuniary loss. *Edwards, supra; Gipson, supra*. This claim is to be determined by the application of the common knowledge and experience of the jurors to the facts and circumstances of the case. *Gipson, supra*. Moreover, Gross is not able to show any prejudice because the case was submitted to the jury on a general verdict. We cannot know how much, if any, the jury awarded on this claim.

 We now turn to Gross's argument concerning Brooks's claim for caretaking expenses. Brooks did not list these damages in his complaint, instead, he first raised them in opening statements when counsel suggested awarding $31,500 to cover handyman tasks for the next thirty-five years of Brooks's life.[2]

 An injured plaintiff is entitled to reimbursement for caretaking expenses incurred in the past, as well as the present value of the same expenses reasonably certain to be required in the future. *Perkins Oil Co. v. Fitzgerald*, 197 Ark. 14, 121

---

**2.** Counsel suggested $75 per month for these expenses.

S.W.2d 877 (1938), *see also Jackson v. U.S.*, 526 F.Supp. 1149, 1154 (E.D.Ark. 1981). There was testimony that Brooks will need to have weekly doctor's visits. The caretaking expenses sought by Brooks could also properly include transportation expenses. *Blissett v. Frisby*, 249 Ark. 235, 458 S.W.2d 735 (1970). Brooks testified that he could no longer put on his shoes and socks without assistance from his children. They could also include housekeeping expenses. *Id.* There was testimony that Brooks would need someone to pick items up from the floor for him.

■ Gross also argues that there is no proof from which the jury could ascertain the value of the services sought by Brooks. According to Gross, Brooks's attorney "pull[ed] a number out of [his] ear" during opening statements when he suggested $75 per month for this item of damage. Our supreme court has recently held that recovery for such services would not be denied merely because such damages cannot be determined with exactness. *Carr v. Nance*, 2010 Ark. 497, 370 S.W.3d 826; *see also Graftenreed v. Seabaugh*, 100 Ark. App. 364, 268 S.W.3d 905 (2007). Other states have held that the jury may determine the reasonable value of caretaking services as a matter of common knowledge without specific evidence of the value. *See Scurlock v. City of Boone*, 142 Iowa 684, 121 N.W. 369 (1909); *Drogmund v. Metropolitan St. Ry. Co.*, 122 Mo.App. 154, 98 S.W. 1091 (1906). As with the loss of earning capacity argument, Gross cannot show prejudice on Brooks's claim for caretaking expenses due to the fact that the case was submitted to the jury on a general verdict. Affirmed.

VAUGHT, C.J., and GLADWIN, J., agree.