RITA W. GRUBER, Chief Judge
Appellant Janann Johnson brings her fourth appeal to this court in her lawsuit against Windstream Communications, Inc., for alleged violations of the Americans with Disabilities Act (ADA) and the Arkansas Civil Rights Act (ACRA).[1] We dismissed her last appeal without prejudice for lack of a final order. Appellant has now timely appealed from a final order and brings the following points on appeal: the circuit court erred in (1) granting Windstream's motion for directed verdict on her retaliation claim; (2) giving a business-judgment jury instruction without informing the jury that it did not apply to her failure-to-accommodate claim; and (3) excluding evidence regarding comparators. We affirm the circuit court's judgment.
I. Jurisdiction
Before we consider Johnson's arguments, we turn to Windstream's contention in its brief that we lack jurisdiction to hear this appeal. Resolution of the issue requires a brief procedural history. The case went to trial before a jury on four of Johnson's claims over several days in March 2015: ADA retaliation, wrongful termination due to disability discrimination, failure to accommodate, and wrongful termination due to sex discrimination. At the close of Johnson's case, her counsel voluntarily nonsuited the claim for wrongful termination due to sex discrimination, and the circuit court granted Windstream's motion for directed verdict on the ADA retaliation claim. The wrongful-termination and failure-to-accommodate claims went to the jury, which rendered a verdict for Windstream on both claims. The court recognized Johnson's voluntary dismissal in its order entered on the jury's verdict on April 2, 2015. On April 6, 2015, Johnson filed a motion for new trial, which the circuit court denied in an order entered on May 1, 2015. On May 15, 2015, Johnson filed a notice of appeal from the April 2, 2015, order and from the order denying her motion for new trial.
The record was lodged in this court on November 10, 2015. We dismissed Johnson's appeal on September 21, 2016, because the voluntary nonsuit without prejudice rendered the order not final, and the circuit court had not entered a properly executed Rule 54(b) certificate. See Johnson III . On October 7, 2016, Johnson filed a petition for rehearing and a petition for review. We denied the petition for rehearing on October 26, 2016, and the supreme court denied the petition for review on March 30, 2017. Our mandate issued on March 30, 2017, and Johnson filed a motion for entry of final judgment in the *238 circuit court on April 12, 2017. The circuit court granted the motion and dismissed all claims with prejudice on May 5, 2017. On May 7, 2017, Johnson filed a notice of appeal from that order and from the 2015 orders she attempted to appeal in Johnson III.
Windstream argues that Johnson had one year from the voluntary dismissal of her claim on April 2, 2015, to refile the claim pursuant to Ark. Code Ann. § 16-56-126 (Repl. 2005). Thus, Windstream argues, the April 2, 2015, judgment became final on April 2, 2016, and Johnson's failure to file a notice of appeal within 30 days after that date-we assume Windstream means by May 2, 2016, though it does not specify-causes her appeal to be untimely. Windstream does not clarify from which order Johnson was required to file a notice of appeal or in which court, as the appeal was pending in this court during the relevant time frame. This argument assumes that Johnson had not refiled this claim in either federal or state court before May 2, 2016. In either case, Johnson had already appealed from the last orders entered at that point-the orders of April 2, 2015, and May 1, 2015.
Once the record was lodged in this court on November 10, 2015, the circuit court no longer had jurisdiction to act further in the matter. Myers v. Yingling , 369 Ark. 87, 89, 251 S.W.3d 287, 290 (2007). We dismissed Johnson's appeal on September 21, 2016, for lack of a final order due to her voluntary nonsuit of one claim. The dismissal of the appeal had the effect of reinvesting jurisdiction in the circuit court to enter a final order in the case. Mountain Pure LLC v. Affiliated Foods Sw., Inc. , 366 Ark. 62, 68, 233 S.W.3d 609, 614 (2006). Our mandate was issued on March 30, 2017, and the circuit court entered a final order on May 5, 2017, from which order Johnson timely appealed. Thus, the appeal is properly before us.
II. Facts
Johnson began working as a staff manager for Windstream in 2006. Joyce Latham was Johnson's direct supervisor during the relevant period. Latham and Johnson had worked together at Alltel before moving to Windstream and had also regularly socialized together outside the office. According to the testimony of both Johnson and Latham, the position of staff manager, which involves managing and being accountable for a team of employees, required good organizational and time-management skills. Johnson also testified that it was stressful, fast-paced, and time-consuming.[2]
Latham testified that she began noticing a change in Johnson's job performance in early 2008, when Johnson missed a lot of deadlines and Latham was notified that Johnson had failed to return voicemails or respond to emails. Latham also received notices that the data provided by Johnson's team was inaccurate. In an evaluation that Latham prepared in February 2008, she noted that Johnson had not been able to meet all of the deadlines and needed to focus on ensuring that her employees were performing their duties so that she could focus on the requirements of her own position as staff manager. In Johnson's semiannual review in August 2008, Latham again apprised Johnson of several areas in which her performance was deficient and needed improvement. Specifically, Latham informed Johnson that she needed to ensure that her team was completing all assignments by the assigned deadline and that she was delegating to *239 her employees and not performing their tasks for them. The review concluded, "Janann currently is not meeting the expectations of a Staff Manager. Without immediate and sustained improvement she will be placed on a Performance Improvement Plan [PIP]."
In mid-October 2008, Latham approached Johnson about taking a demotion (but keeping her salary) to a senior-analyst position that had no management responsibilities. Latham told her that the other option was to put her on a PIP to deal with the performance issues. Johnson asked for time to consider the options, and she selected the PIP on October 28, 2008. That same day, in an email to Latham, she requested a few days of leave under the Family and Medical Leave Act (FMLA) claiming, "Due to the stress of the past week or so, I'm having issues sleeping, thinking, concentrating, etc." Latham granted her the time off. At some point during this time off, Johnson met with an attorney and a psychiatrist at the attorney's office regarding the issues in this lawsuit.
On November 5, 2008, after Johnson returned from FMLA leave, Windstream presented Johnson with the written PIP, which set forth problem areas in which improvement was necessary, including, among other items, missed deadlines; failure to independently set priorities; poor team management; and failure to timely respond to emails, voicemails, and employee issues. Johnson was again given the option to work as a senior analyst at the same salary rather than enter into a PIP. Johnson chose the PIP. On November 13, 2008, in a written response to the PIP, Johnson mentioned her alleged disability:
The last few weeks have been extremely stressful, and I have been forced to consult a physician. I believe I am substantially limited in my ability to think and concentrate, and I believe I will need intermittent FMLA leave as an accommodation. As a further accommodation, I request that my superiors give me weekly feedback regarding my progress, as well [as] objective benchmarks so I can measure my success. An agenda for each meeting will help all of us communicate. If you believe that I am deficient in any of my skill sets, I request additional training opportunities.
There is no evidence in the record that Johnson had told Windstream before this time that she suffered from any substantial limitation or "disability."
The parties dispute exactly how often Johnson and Latham had meetings during the PIP process-though at least biweekly-but they agree that Latham's and Johnson's offices were "within shouting distance from each other" and that they spoke regularly in the office. Due to the Thanksgiving and Christmas holidays, both Latham and Johnson were out of the office some during this time. After entering the PIP, Johnson continued to experience performance problems, and on December 19, 2008, Windstream issued Johnson a final written warning-signed by Latham, Angela Newell (Latham's manager), and Toni Hardin (Newell's manager)-detailing numerous deficiencies since November 12, 2008, and indicating that without an immediate and sustained improvement, corrective action would result, "up to and including termination." On January 7, 2009, Johnson requested and was given additional FMLA leave. She returned to work January 20, 2009. An agenda for a meeting regarding performance on the PIP dated January 23, 2009, listed numerous additional deficiencies since the December written warning. Finally, on January 29, 2009, Latham prepared a request for termination of Johnson, stating that her performance issues *240 continued in spite of the PIP (listing numerous deficiencies) and concluding that Johnson was still failing to manage her staff to ensure that all deadlines were met, tasks were completed in a timely manner, and team members were producing acceptable work. Johnson was terminated on January 30, 2009.
On November 16, 2009, Johnson filed a complaint against Windstream, alleging that her termination violated various provisions of the ADA and ACRA. The circuit court granted summary judgment twice on the claims, and we reversed both on appeal without reaching the merits. See Johnson I ; Johnson II . The case went to trial, and at the close of Johnson's case, the circuit court granted Windstream's motion for directed verdict on the ADA retaliation claim. The wrongful-termination and failure-to-accommodate claims went to the jury, which rendered a verdict for Windstream on both claims. Johnson brings this appeal.
III. Directed Verdict on ADA Retaliation Claim
For her first point on appeal, Johnson argues that the circuit court erred in granting Windstream's motion for directed verdict on the ADA retaliation claim-that Windstream terminated Johnson for requesting accommodation for her disability. Our supreme court has set forth the following standard for reviewing a circuit court's ruling granting a motion for directed verdict:
In determining whether a directed verdict should have been granted, we review the evidence in the light most favorable to the party against whom the verdict is sought and give it its highest probative value, taking into account all reasonable inferences deducible from it. A motion for directed verdict should be granted only if there is no substantial evidence to support a jury verdict. Where the evidence is such that fair-minded persons might reach different conclusions, then a jury question is presented, and the directed verdict should be reversed.
Higginbotham v. Graham , 2013 Ark. App. 397, at 2, 2013 WL 3088995. Substantial evidence is evidence of "sufficient force and character to compel a conclusion one way or the other with reasonable certainty and must force the mind to pass beyond mere suspicion or conjecture." Schubert v. Target Stores, Inc. , 2010 Ark. 466, at 3, 369 S.W.3d 717, 719 (affirming grant of directed verdict).
In order to submit a claim of retaliation to the jury, there must either be direct evidence of retaliation or an inference of retaliation must be created under the McDonnell Douglas burden-shifting framework. Lors v. Dean , 746 F.3d 857, 865 (8th Cir. 2014) (citing McDonnell Douglas Corp. v. Green , 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) ). The Eighth Circuit described direct evidence of retaliation as
"evidence that demonstrates a specific link between a materially adverse action and the protected conduct, sufficient to support a finding by a reasonable fact finder that the harmful adverse-action was in retaliation for the protected conduct." Young-Losee v. Graphic Packaging Int'l, Inc. , 631 F.3d 909, 912 (8th Cir. 2011) (citation omitted). By "direct" evidence, we mean "the causal strength of the proof, not whether it is 'circumstantial' evidence." Id. (quoting Griffith v. City of Des Moines , 387 F.3d 733, 736 (8th Cir. 2004) ). We have found, for example, "direct evidence that [an employee] was terminated in retaliation for filing a formal complaint of harassment" where a plant supervisor "wadded up [the employee's] complaint, called it 'total *241 bullshit,' threw it in the garbage can, told [the employee] to leave, and said he never wanted to see [the employee] again." Id.
Id. at 865. In the absence of direct evidence, the McDonnell Douglas framework provides that Johnson must first establish a prima facie case of retaliation, which requires (1) that she engaged in statutorily protected conduct; (2) that Windstream took an adverse action against her; and (3) that there was a causal connection between the adverse action and the protected activity. E.E.O.C. v. Prod. Fabricators, Inc. , 763 F.3d 963 (8th Cir. 2014). Once this prima facie case is established, the burden shifting begins, and Windstream must offer a legitimate, nondiscriminatory reason for its actions. If Windstream does this, the burden shifts to Johnson to prove that Windstream's reason is pretextual. See Lors , 746 F.3d at 867.
Turning first to whether Johnson has introduced evidence sufficient to prove a prima facie case, we will assume, as Windstream does in its brief, that Johnson has met the first two elements: she engaged in protected activity by requesting accommodation for her disability and her termination constituted a subsequent adverse action. The parties' argument centers on whether there is a causal link between the two events. A retaliation claim under the ADA requires a but-for causal connection between the employee's assertion of his or her ADA rights and an adverse action by the employer. Oehmke v. Medtronic, Inc. , 844 F.3d 748, 758 (8th Cir. 2016) (citing Univ. of Tex. Sw. Med. Ctr. v. Nassar , 570 U.S. 338, 133 S.Ct. 2517, 186 L.Ed.2d 503 (2013) ). To support causation, Johnson points to timing, that is, she complained of a disability, requested accommodation, and was fired three months later; Windstream's deviation from its own policies and less harsh treatment of another employee who was supervised by Latham; and negative comments by her superiors in emails.
With regard to timing, Johnson must show more than temporal connection: here, that she requested accommodations for her alleged disability and she was subsequently fired. Important in this case, "[e]vidence that the employer had been concerned about a problem before the employee engaged in the protected activity undercuts the significance of the temporal proximity." Hervey v. Cty. of Koochiching , 527 F.3d 711, 723 (8th Cir. 2008) (quoting Smith v. Allen Health Sys., Inc. , 302 F.3d 827, 834 (8th Cir. 2002) ). Even where timing is a factor supporting a causal connection, the Eighth Circuit has held that "[m]ore than two months is too long to support a finding of causation without something more." Lors , 746 F.3d at 866. Here Johnson's job performance was in issue long before she first asserted that she was "substantially limited" in her ability to think and concentrate and needed accommodation on November 13, 2008. A February 2008 review mentioned several areas in which Johnson was deficient, and her September 2008 review stated that she was not meeting the expectations of a staff manager and that "[w]ithout immediate and sustained improvement she will be placed on a PIP." Johnson was offered the option of taking a position as a senior analyst at the same salary or entering a PIP a month before she first alleged a disability and requested accommodation. The PIP continued for over two months before Johnson was eventually terminated. This clearly undercuts her contention that her alleged disability and request for accommodation caused her termination.
Johnson also argues that Windstream deviated from its own policies with regard to her PIP process, suggesting that she was treated differently from others because *242 of her disability and request for accommodation. The record contains no evidence of any written policies regarding a PIP, nor does Johnson's evidence indicate that any written provision indicative of an established policy or procedure for a PIP was violated. Tony Thomas, who was the chief accounting officer in 2008 and 2009, testified that a PIP is a "serious indicator that you're having a performance problem" and that one either meets the expectations of the PIP or is ultimately terminated. He also testified that a PIP can take thirty days or longer, depending upon the facts and circumstances in the particular PIP. He said that sometimes you "do know after thirty days" that it simply is not going to work out for that employee. Toni Hardin testified that a PIP is serious and that there are two outcomes: you improve to the expectations of the PIP or it leads to termination. Johnson admitted that she was "very" concerned about the performance issues raised in August and September 2008, knew that a PIP was serious, and realized "there was a high likelihood" that she would lose her job when she received the PIP in late October 2008-before she informed Windstream that she had a disability. While she argues that she was improving and that she did not receive sufficient feedback during her PIP, she did not present evidence that Windstream violated its own policies in her PIP process. And although she introduced the records of another Windstream employee, Jeffrey McKillen, who was given almost two years from the time he was informed of performance deficiencies until he was ultimately terminated, this evidence does not support a but-for causal connection between Johnson's protected activity and her termination. She argues that there was no evidence that McKillen was disabled or that he had requested accommodation, and he was given much more time to correct his ways. The record indicates that McKillen also was not a staff manager but a senior analyst and that he was not directly managed by Latham but by Anthony Fuller, who was under Latham. This is not evidence that a similarly situated employee was treated differently. See, e.g. , Evance v. Trumann Health Servs., LLC , 719 F.3d 673, 678 (8th Cir. 2013). And to infer that Johnson was treated differently from other employees because of her disability on the basis of one other employee who shared neither her job nor her direct manager is purely speculation.
Finally, Johnson introduced an email between Latham and Latham's manager, Angela Newell, dated December 2, 2008, suggesting that there was a Windstream employee available at the end of January to "backfill" Johnson's position. In explanation, Tony Thomas testified that Johnson's position was important, that the company needed to consider the possibility that Johnson would not meet the expectations for the PIP, and that the company was considering who might be available to fill the position in that event. While this email indicates that Windstream contemplated in December that Johnson might not meet her PIP expectations, it nowhere mentions that this is due to Johnson's disability or to her request for accommodation. Windstream had cause to terminate Johnson due to her performance issues. This email simply doesn't rise to proof that Johnson would not have been terminated but for her disability.
But even if we assume that Johnson has presented sufficient evidence to establish a prima facie case for retaliation, her claim must fail because Windstream has presented a legitimate, nondiscriminatory reason for terminating Johnson-that is, her continued poor performance. In her own testimony, Johnson admitted that she failed to accomplish a $40,000 refund for a client in November 2008, that she "forgot"
*243 to issue the credit, and that it was "embarrassing." It was listed on Latham's request for termination as having been billed incorrectly again on January 7, 2009. She admitted that Latham identified another mistake in which Johnson failed to follow up on "millions of dollars worth of bills" that were to be sent out in late December 2008 that were not sent out until January. Angela Newell identified a mistake on a December circuit-activity report that was sent to senior management. On January 14, 2009, Windstream's outside auditor notified executive management that there was a control deficiency in Johnson's area of management regarding a rate change that required the entire year of 2008 to be re-reviewed for control deficiencies. These are just a few examples of the performance issues in evidence. Johnson's disagreement with Windstream's assessment of her performance and improvement must do more than raise doubts about Windstream's wisdom and fairness. Lenzen v. Workers Comp. Reinsurance Ass'n , 705 F.3d 816, 821 (8th Cir. 2013). Johnson's evidence simply does not support a reasonable inference that Windstream's stated reason for terminating Johnson is a pretext. Because none of Johnson's evidence sufficiently demonstrates retaliatory intent to establish that Windstream's proffered reason for discharging Johnson is pretext, we will not second-guess its decision to discharge an employee who has continued to perform deficiently. See, e.g. , Kasper v. Federated Mut. Ins. Co. , 425 F.3d 496, 504 (8th Cir. 2005). We affirm the circuit court's granting of Windstream's motion for directed verdict on Johnson's retaliation claim.
IV. Business-Judgment Jury Instruction
For her second point on appeal, Johnson contends that the circuit court abused its discretion in giving a business-judgment jury instruction without informing the jury that it should not be applied to Johnson's failure-to-accommodate claim. In Arkansas, a party is entitled to a jury instruction when it is a correct statement of the law and there is some basis in the evidence to support giving the instruction. Armstrong Remodeling & Constr., LLC v. Cardenas , 2012 Ark. App. 387, at 10, 417 S.W.3d 748, 755. Jury instructions are not to be viewed in isolation but are to be considered as a whole to determine whether the circuit court correctly instructed the jury. Id. We will not reverse a circuit court's decision to give an instruction unless the court abused its discretion. Vidos v. State , 367 Ark. 296, 308, 239 S.W.3d 467, 476 (2006).
The instruction at issue is contained in the Eighth Circuit's Model Civil Jury Instructions. It provides as follows: "You may not return a verdict for the plaintiff just because you might disagree with the defendant's decision or believe it to be harsh or unreasonable." 8th Cir. Civ. Jury Instr. § 5.11 (2014). The instruction is a correct statement of the law relating to Johnson's wrongful-termination claim. Walker v. AT & T Techs. , 995 F.2d 846 (8th Cir. 1993) (holding it was reversible error to deny similar business-judgment instruction in wrongful-termination age-discrimination case); Hancock v. Washington Hosp. Ctr. , 13 F.Supp.3d 1 (D.D.C. 2014), aff'd 618 Fed.Appx. 4 (D.C. Cir. 2015) (rejecting argument that business-judgment instruction is not appropriate in ADA failure-to-accommodate case). In Walker , the Eighth Circuit held that the circuit court's rejection of a business-judgment instruction in a wrongful-termination case was error and reversed the case holding that "[a]s long as the decision is not based on unlawful age discrimination, 'the courts have no business telling [companies] ... how to make personnel decisions, which may be objectively or subjectively *244 based.' " Id. at 850 (quoting Neufeld v. Searle Labs. , 884 F.2d 335, 340 (8th Cir. 1989) ). The court agreed with appellant that the law provides that an employer has the right to make business decisions-to assign work, to change an employee's duties, to refuse to assign a particular job, and to discharge-for good reason, bad reason, or no reason at all, absent intentional age discrimination. Id.
To support a failure-to-accommodate claim under the ADA, a plaintiff must establish both a prima facie case of discrimination based on the plaintiff's disability (wrongful-termination claim) and a failure to accommodate it. Kelleher v. Wal-Mart Stores, Inc. , 817 F.3d 624 (8th Cir. 2016). The circuit court in this case gave the jury instructions on reasonable accommodation, making clear the employer's duty to initiate an "informal, interactive process" with the individual in need of accommodation. The court also instructed the jury that it should find in Johnson's favor if Windstream knew of Johnson's disability and failed to provide reasonable accommodations that would have permitted her to perform the essential functions of her job. Jury instructions are not to be viewed in isolation but are to be considered as a whole to determine whether the circuit court correctly instructed the jury. Armstrong Remodeling & Constr., LLC , 2012 Ark. App. 387, at 10, 417 S.W.3d at 755. In a gender-discrimination case brought under the Equal Pay Act rather than under Title VII, the Eighth Circuit recognized that the business-judgment instruction should not have been given, but held that no error had occurred, reasoning as follows:
Although the business-judgment instruction should not have been given, this court examines " 'whether the jury instructions, taken as a whole, fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury in a particular case.' " McCoy [v. Augusta Fiberglass Coatings, Inc. , 593 F.3d 737, 745-46 (8th Cir. 2010) ], quoting Brown [v. Sandals Resorts Int'l , 284 F.3d 949, 953 (8th Cir. 2002) ] (emphasis added). Here, the business-judgment instruction immediately followed three instructions that correctly define the plaintiff's prima
facie case under the EPA, the term "substantially equal," the defendant's burden of persuasion, and four possible affirmative defenses. The business-judgment instruction limited the jury from ruling for Bauer solely for irrelevant reasons that are not in the preceding three instructions. Taken as a whole, the instructions correctly state the law, requiring a verdict for the plaintiff under some circumstances or for the defendant under others. No error occurred.
Bauer v. Curators of Univ. of Mo. , 680 F.3d 1043, 1046 (8th Cir. 2012).
Finally, Johnson fails to cite any authority to support her position that the business-judgment instruction is inappropriate or reversible error in ADA failure-to-accommodate cases. Assignments of error that are unsupported by convincing authority will not be considered. Gwin v. Daniels , 357 Ark. 623, 184 S.W.3d 28 (2004). We hold that the circuit court did not abuse its discretion in giving the instruction.
V. Excluded Evidence of Comparators
For her final point on appeal, Johnson argues that the circuit court erred in excluding evidence regarding two Windstream employees-Maxwell Hestir and Sean Martin-whose situations she contends were similarly situated to hers. Johnson attempted to introduce this evidence during Latham's testimony in the presentation of Windstream's case. She had already presented comparator evidence of Jeffrey McKillan through Latham *245 during the presentation of her own case. Mr. McKillan was not a staff manager but a senior analyst and was not directly managed by Latham but by Anthony Fuller, who was under Latham. We will not reverse a circuit court's decision to admit or refuse evidence unless the court has abused its discretion and the appellant shows prejudice. Jones v. Coker , 90 Ark. App. 151, 156, 204 S.W.3d 554, 558 (2005).
When a plaintiff is attempting to show pretext in an ADA discrimination claim, one way of doing this is to show that an employer treated similarly situated employees in a disparate manner. McNary v. Schreiber Foods, Inc. , 535 F.3d 765, 770 (8th Cir. 2008). Whether the employees are similarly situated is a "rigorous test" because the employees used for comparison must be "similarly situated in all relevant respects." E.E.O.C. v. Prod. Fabricators, Inc. , 763 F.3d at 970 (quoting Evance , 719 F.3d at 678 ). In other words, they "must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." Id. The two employees at issue here were both analysts, not staff managers; thus they had no supervisory duties, which duties comprised the majority of Johnson's deficiencies. In addition, neither was directly supervised by Latham. Latham had neither prepared nor signed either of the reports sought to be introduced, and nothing indicated that these employees had been personally evaluated by Latham. Accordingly, we hold that the circuit court did not abuse its discretion in excluding the evidence.
Affirmed.
Whiteaker and Hixson, JJ., agree.

For a full history of this case, see the following opinions: Johnson v. Windstream Commc'ns, Inc. , 2012 Ark. App. 590, 2012 WL 5327799 (Johnson I ); Johnson v. Windstream Commc'ns, Inc. , 2014 Ark. App. 99, 2014 WL 580151 (Johnson II ); and Johnson v. Windstream Commc'ns, Inc. , 2016 Ark. App. 419, 2016 WL 5122562 (Johnson III ).

Before Johnson began working at Windstream as a staff manager, she had been a senior analyst at Alltel, where she had not been responsible for other employees.