# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2198

_____

| | | |
|---|---|---|
| Candice E. Mitchell, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Southern |
| Iowa Protection and | * | District of Iowa. |
| Advocacy Services, Inc.; | * | |
| Sylvia Piper, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: January 13, 2003

Filed: April 15, 2003 (corrected April 29, 2003)

_____

Before LOKEN,[*] FAGG, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Candice Mitchell brought an action claiming that her termination by Iowa Protection and Advocacy Services, Inc. (Iowa P & A) violated the Americans with Disabilities Act of 1990 (ADA), _see_ 42 U.S.C. §§ 12101-12213, the Iowa Civil Rights Act of 1965 (ICRA), _see_ Iowa Code Ann. §§ 216.1-216.20, and Iowa public

_____

[*]The Honorable James B. Loken became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 1, 2003.

policy. When the district court[1] granted summary judgment in favor of Iowa P & A on all claims, Ms. Mitchell appealed. Because we find that Ms. Mitchell did not make out a submissible case on an essential element of her claims, we affirm.

I.

Iowa P & A is a nonprofit corporation that provides advocacy services for individuals with developmental and mental health disabilities. At the time that this dispute arose, Iowa P & A operated several programs, one of which was the Partners in Policymaking Program. This program was funded with federal dollars through a state-awarded grant; in contrast, most of Iowa P & A's other programs were funded directly from federal appropriations. The goal of the Partners Program was to teach individuals with developmental disabilities, or those caring for them, to be effective advocates for their rights. Each year, approximately thirty participants were selected to participate in the six-month program.

Iowa P & A hired Ms. Mitchell to be the grant coordinator for the Partners Program. Her direct supervisor was Sylvia Piper. As part of her duties as grant coordinator, Ms. Mitchell was responsible for reviewing applications to the Partners Program and determining the type of accommodations, if any, that each applicant would need if selected. The applications were then forwarded to the planning committee, which reviewed and ultimately selected the participants for the following year. Because Ms. Mitchell and Ms. Piper were not members of the planning committee, they did not participate in the selection process.

Ms. Mitchell received five applications from persons in Woodward State Hospital's Apple Program. Woodward residents were placed in the Apple Program if, in addition to having a developmental disability, they had either been charged with

---

[1]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

sexual offenses or engaged in inappropriate sexual behavior. On the day that the planning committee was to make its Partners Program selections, Ms. Mitchell and Ms. Piper engaged in a discussion regarding applicants from the Apple Program. According to Ms. Mitchell's testimony, Ms. Piper stated that she did not want the committee to consider applicants from the Apple Program because of the liability that might arise from any improper behavior that those applicants might engage in. In response to this direction, Ms. Mitchell apparently told Ms. Piper that she would not exclude Apple Program participants from the application pool because she believed that doing so would be a violation of anti-discrimination laws.

Following her conversation with Ms. Piper, Ms. Mitchell discussed the matter with Iowa P & A employees Lisa Heddens and Mark Kelderman. Then, shortly before the planning committee met, Mr. Kelderman approached Ms. Piper and told her that he agreed with Ms. Mitchell that excluding Apple Program participants would be illegal. Mr. Kelderman reiterated his feelings at the planning committee meeting and threatened to take legal action if Apple Program participants were excluded from the applicant pool. The planning committee decided to consider the five applicants from the Apple Program, and two were selected.

Five days later, Mervin Roth, Iowa P & A's executive director, notified Ms. Mitchell that she was being terminated. Mr. Roth gave her a memo that explained that the termination was due to budgetary reasons and that her duties would be assumed by other staff within the agency. Ms. Mitchell's duties were in fact taken over by Ms. Heddens. Ms. Mitchell argues that she was terminated because she refused to engage in discriminatory behavior.

## II.

We review a district court's grant of summary judgment *de novo*. *Rademeyer v. Farris*, 284 F.3d 833, 836 (8th Cir. 2002). "Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party,

demonstrates that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." *Clark v. Kellogg Co.*, 205 F.3d 1079, 1082 (8th Cir. 2000); *see* Fed. R. Civ. P. 56(c).

Ms. Mitchell's primary claim is grounded in the ADA, which prohibits retaliation against an individual because that individual "opposed any act or practice made unlawful by [it]." 42 U.S.C. § 12203(a). We evaluate these claims under the burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973), as refined by *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-56 (1981), and *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 505-512 (1993). *See Amir v. St. Louis Univ.*, 184 F.3d 1017, 1025 (8th Cir. 1999). Under this framework, a plaintiff must first establish a prima facie case of retaliation. *See Hicks*, 509 U.S. at 506. The employer must then rebut the presumption of retaliation by articulating a legitimate, nonretaliatory reason for the adverse employment action. *See id.* at 506-07. If the employer does so, the burden of production shifts back to the plaintiff to demonstrate that the employer's proffered reason is pretextual. *See id.* at 507-08.

To make out a prima facie case under § 12203(a), Ms. Mitchell was required to show that she engaged in protected conduct, that she suffered an adverse employment action, and that the adverse action was causally linked to the protected conduct. *See Amir*, 184 F.3d at 1025; *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir.1999) (en banc). The district court found that even if Ms. Mitchell could show the first two elements necessary for a prima facie case, she failed to establish that her termination was linked to the purportedly protected conduct. We agree.

Iowa P & A presented substantial evidence to support their assertion that Ms. Mitchell was terminated for budgetary reasons. Three days before Ms. Mitchell's termination, Les Bascom, Iowa P & A's accountant, sent a draft budget for fiscal year

2000 to Mr. Roth. Mr. Bascom projected that Iowa P & A would be over its budget in several programs if immediate steps were not taken to cut costs. Mr. Bascom then offered several possible solutions to the budget shortfall, one of which was to implement a reduction in force. Later that day, Mr. Roth discussed this information with one of Iowa P & A's program coordinators, Curt Sytsma, and asked him whether he would rather eliminate the position held by Ms. Mitchell or the position held by Ms. Heddens. Mr. Sytsma indicated his preference for keeping Ms. Heddens, whom he viewed as vital to several ongoing projects. The record indicates that Mr. Roth then told Ms. Piper of the decision to lay off Ms. Mitchell. Three hours later, the board of directors met and discussed Iowa P & A's budget problems. The minutes taken during this meeting reflect a recommendation by Mr. Roth and Mr. Bascom to implement personnel changes by enforcing a hiring freeze and by eliminating four staff positions, including the one held by Ms. Mitchell. The board of directors accepted this recommendation.

Ms. Mitchell argues that the described events were merely a charade conjured up to conceal the true reason for her termination. She maintains that her termination could not in any way have helped to relieve budget pressures, since the Partner Program received its funding from a source separate from other Iowa P & A programs. At first blush, this argument appears to do serious damage to Iowa P & A's proffered reason for termination; but it is belied by the fact that when Ms. Heddens assumed Ms. Mitchell's Partner Program duties, a portion of Ms. Heddens's salary was absorbed by the Partners Program. This cost-shifting move would have helped to relieve budget pressures in the program that was formerly paying the entirety of Ms. Heddens's salary.

While Iowa P & A has produced substantial evidence to support its claim that Ms. Mitchell was terminated for budgetary reasons, there is not a scintilla of evidence to suggest that Ms. Piper was involved in the decision to terminate her. Rather, the uncontroverted record reflects that Ms. Piper found out about the decision only hours

before the board meeting, after Mr. Roth and Mr. Sytsma had already decided to recommend a reduction in force to the board of directors. In addition, there is no evidence that Mr. Bascom, Mr. Roth, or Mr. Sytsma (the three key figures in the decision to eliminate staff) were even aware of the acrimonious incident between Ms. Mitchell and Ms. Piper before the decision to terminate had been made, and none of these individuals was involved in the process to select Partners Program participants.

Ms. Mitchell's case seems to boil down to the fact that the decision to terminate her was made two days after she and Ms. Piper had a dispute. Indeed, Ms. Mitchell argues that this temporal proximity is sufficient in itself to allow the issue of causation to go to a jury. It is true that in a proper case "the requisite causal connection may be proved circumstantially by proof that the discharge followed the protected activity so closely in time as to justify an inference of retaliatory motive." *Rath v. Selection Research, Inc.*, 978 F.2d 1087, 1090 (8th Cir. 1992); *see also Foster v. Time Warner Entertainment Co.*, 250 F.3d 1189,1196 (8th Cir. 2001); *Smith v. Riceland Foods, Inc.*, 151 F.3d 813, 819-820 (8th Cir. 1998). But this is not such a case, because, as we have said, there is no evidence that Ms. Piper played a part in the decision to terminate Ms. Mitchell or that those who made the decision knew of the dispute between her and Ms. Piper. A mere coincidence does not make out a case for the jury.

In this case, Ms. Mitchell did not create a genuine issue of material fact regarding whether her purportedly protected action was causally connected to her termination. She thus failed to make out a prima facie case of retaliation under the ADA. Furthermore, since claims under the ICRA are dealt with by applying the standards relevant to claims under the ADA, *see Helfter v. United Parcel Serv., Inc.*, 115 F.3d 613, 616 (8th Cir.1997), Ms. Mitchell's ICRA claim must also fail.

## III.

Ms. Mitchell argues finally that her termination violated public policy. Although the Iowa Supreme Court has held that an employer may not terminate an at-will employment arrangement for reasons that violate public policy, *see Lara v. Thomas*, 512 N.W.2d 777, 781-82 (Iowa 1994), that court has explicitly held that the ICRA is the exclusive remedy for claims based on discrimination, *see Greenland v. Fairtron Corp.*, 500 N.W.2d 36, 38 (Iowa 1993). In this case, Ms. Mitchell's ICRA claim is that she was fired because she opposed her employer's supposedly discriminatory behavior. We therefore agree with the district court that Ms. Mitchell's common-law claim of wrongful discharge is preempted by the statutory scheme of the ICRA.

For the foregoing reasons, we affirm the district court's grant of summary judgment.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.