# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-2955

_____

Tim Lors, acting in his own capacity

*Plaintiff - Appellant*

v.

Jim Dean, acting in his official capacity; Deb Dufour, acting in her official and individual capacities; Kim Stahl, acting in her official and individual capacities; Otto Doll, acting in his official and individual capacities; Bureau of Telecommunications, The State of South Dakota; Attorney General: Marty Jackley; Governor: Michael Rounds

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of South Dakota - Pierre

_____

Submitted: November 13, 2013
Filed: March 13, 2014

_____

Before WOLLMAN, MURPHY, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Tim Lors sued his employer, the South Dakota Bureau of Information and Technology (BIT), and various state employees (collectively, "defendants"), alleging

retaliation in response to a prior discrimination suit that he filed against the same defendants. Lors's complaint asserted jurisdiction under various federal statutes, including Titles I and V of the Americans With Disabilities Act of 1990 (ADA). The district court[1] granted summary judgment to the defendants on the merits. Lors appealed, and we issued a sua sponte order for supplemental briefing to address whether sovereign immunity bars Lors's claims. Upon review, we held that sovereign immunity barred Lors's claims for money damages against the defendants, and we dismissed the appeal for lack of jurisdiction. *Lors v. Dean*, 726 F.3d 1036 (8th Cir. 2013), *reh'g granted & opinion vacated* October 2, 2013.

Thereafter, Lors petitioned for en banc rehearing and panel rehearing. He argued, among other things, that the court failed to follow the Supreme Court's decisions in *Tennessee v. Lane*, 541 U.S. 509 (2004), and *United States v. Georgia*, 546 U.S. 151 (2006). He also asserted that this court failed to certify the question of the constitutionality of the federal statute to the Attorney General as required by 28 U.S.C. § 2403(a) and Fed. R. App. P. 44(a).[2] We granted panel rehearing in this case, vacated our earlier opinion and judgment, and "directed [the parties] to file supplemental briefs addressing . . . *Lane* . . . and . . . *Georgia* . . . [,] as well as Lors's contention that this court failed to certify the question of the constitutionality of the federal statute to the Attorney General as required by 28 U.S.C. § 2403(a) and Fed.

---

[1]The Honorable Roberto A. Lange, United States District Judge for the District of South Dakota.

[2]In his petition for rehearing, Lors admitted that he had not previously raised these cases or issues in his supplemental brief on sovereign immunity but argued that he did not "waive[] the opportunity to rely on relevant and controlling Supreme Court precedent because his counsel failed to cite it." He contended that "the United States would surely have addressed those cases had this Court complied with 28 U.S.C. § 2403(a) and Fed. R. App. P. 44(a) and invited the Attorney General to intervene to defend the constitutionality of the ADA's abrogation in this context."

R. App. P. 44(a)." We now affirm the district court's grant of summary judgment to the defendants on the merits.

## I. *Background*

The BIT employed Lors as a Computer Support Team Leader until November 2004 when Lors's supervisors transferred him to a Computer Support Analyst position. After his transfer, Lors filed a complaint in federal court, alleging discrimination under Section 504 of the Rehabilitation Act of 1973 and the ADA. Animosity and mistrust developed between Lors and his coworkers, in part because his coworkers learned that Lors made, and continued to make, secret recordings of his conversations at work. On December 15, 2008, the district court granted summary judgment to the defendants on Lors's discrimination claim. *Lors v. Dean*, No. 07-3017, 2008 WL 5233105 (D.S.D. Dec. 15, 2008). Lors appealed the court's grant of summary judgment to this court. On March 17, 2009, Lors's supervisors placed him on a 30-day work improvement plan (WIP). Lors failed to meet the goals under the WIP, and the BIT terminated Lors's employment on April 23, 2009. Lors's appeal of his discrimination claim was still pending before this court at the time of his termination. This court subsequently affirmed the district court's grant of summary judgment.[3] *Lors v. Dean*, 595 F.3d 831 (8th Cir. 2010).

Lors filed a grievance with the South Dakota Career Service Commission (CSC). He argued that the BIT terminated him in retaliation for his filing of the discrimination lawsuit. The CSC determined that the BIT terminated Lors's employment for cause, and it found no credible evidence that the BIT terminated Lors in retaliation for his discrimination-lawsuit filing. The Sixth Judicial Circuit Court of

---

[3]Our decision in Lors's appeal of his discrimination claim does not preclude us from addressing the issue of sovereign immunity under the ADA on this appeal of his retaliation claim. "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Webster v. Fall*, 266 U.S. 507, 511 (1925).

South Dakota, Civ. No. 10-294, affirmed the CSC's findings. Lors did not appeal the state court's decision. Lors then applied for unemployment benefits, and his claim was denied. He appealed the denial, and the Unemployment Insurance Appeals Division of the South Dakota Department of Labor determined that Lors was not eligible for benefits because he had been terminated for misconduct.

Lors then filed the instant action, pro se, in the district court, alleging retaliation and asserting jurisdiction under Titles I and V of the ADA, Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Civil Rights Act of 1991.[4] The defendants asserted various defenses and alleged that they were immune to suit under the Eleventh Amendment and the doctrine of sovereign immunity. The defendants moved for summary judgment. The district court evaluated Lors's claim under the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The court found that Lors established a prima facie case of retaliation, but it also found that the defendants rebutted the resulting "presumption of retaliation by articulating a legitimate, non-retaliatory reason for the adverse employment action." *Lors v. Dean*, No. 10-3024-RAL, 2012 WL 2970492, at \*8 (D.S.D. July 20, 2012) (citing *Mitchell v. Iowa Prot. & Advocacy Servs., Inc.*, 325 F.3d 1011, 1013 (8th Cir. 2003)). The court found that "the CSC, the circuit court

---

[4]Neither the Civil Rights Act of 1991 nor Title VII establish jurisdiction over Lors's claims in this appeal. First, the Civil Rights Act of 1991 was enacted to amend the ADA and Title VII. As such, it does not provide any basis for this court's jurisdiction over Lors's claims that is independent of the ADA or Title VII. Furthermore, although "Congress . . . abrogat[ed] States' sovereign immunity in Title VII of the Civil Rights Act of 1964, 78 Stat. 255, 42 U.S.C. § 2000e-2(a), and [the Supreme Court] sustained this abrogation in *Fitzpatrick* [*v. Bitzer*, 427 U.S. 455 (1976)]," *Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 729–30 (2003), Title VII only pertains to claims brought on the basis of an "individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Lors does not claim retaliation on the basis of race, color, religion, sex, or national origin. Consequently, this court also does not have jurisdiction under Title VII over Lors's claims.

affirmance of the CSC ruling, and the Unemployment Insurance Appeals Division rulings all have issue preclusion effect that there existed legitimate non-discriminatory grounds for discipline and termination of Lors." *Id.* The court then found that

> Lors's evidence and explanations are not sufficient as a matter of law to create a genuine issue of material fact as to whether the employer's proffered reasons were pretextual or create an issue of fact on that subject, especially when the findings of two state tribunals have found preclusive effect that there was cause for BIT to discipline Lors and terminate Lors's employment apart from the ADA claim.

*Id.* Consequently, the district court granted the defendants' motion for summary judgment. *Id.*

The district court did not address the issue of sovereign immunity. *See id.* Lors appealed, and both sides briefed the merits of Lors's claim. Because "sovereign immunity . . . is a jurisdictional threshold matter," *see Harmon Indus., Inc. v. Browner*, 191 F.3d 894, 903 (8th Cir. 1999), and presents "a jurisdictional question that may be raised at any time," *United States v. Johnson*, 853 F.2d 619, 623 n.7 (8th Cir. 1988) (citations omitted), we issued, sua sponte, an order for supplemental briefing to address whether Lors's claims against the state and its employees under Titles I and V of the ADA were barred by sovereign immunity. Upon review, we held that sovereign immunity barred Lors's claims for money damages against the defendants, and we dismissed the appeal for lack of jurisdiction. *Lors*, 726 F.3d at 1036.

We granted Lors's petition for panel rehearing to address the application of *Tennessee v. Lane*, 541 U.S. 509 (2004), and *United States v. Georgia*, 546 U.S. 151 (2006), to the present case and whether we must certify the question of the federal statute's constitutionality to the Attorney General.

## II. *Discussion*

Questions of sovereign immunity are subject to de novo review. *See United States v. Moser*, 586 F.3d 1089, 1092 (8th Cir. 2009); *Thomas v. St. Louis Bd. of Police Comm'rs*, 447 F.3d 1082, 1084–85 (8th Cir. 2006). Article III of the U.S. Constitution vests "[t]he Judicial power of the United States" in the federal courts. U.S. Const. art. III. The Eleventh Amendment restricts the scope of the judicial power. It provides, in pertinent part, that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI. By its terms, the Eleventh Amendment does not bar claims against a state by its own citizens. *See id.* But since 1890, the Supreme Court has held that Eleventh Amendment sovereign immunity extends to claims by a state's own citizens. *See Hans v. Louisiana*, 134 U.S. 1 (1890).

When Congress enacted the ADA in 1990, it sought to abrogate state sovereign immunity to lawsuits alleging that a state violated its provisions. *See* 42 U.S.C. § 12202.

> [W]e held in *Alsbrook v. City of Maumelle, Ark.*, 184 F.3d 999, 1010 (8th Cir. 1999) (en banc), *cert. dismissed*, 529 U.S. 1001, 120 S. Ct. 1265, 146 L. Ed. 2d 215 (2000), that Title II of the ADA "was not a proper exercise of Congress's power under Section 5 of the Fourteenth Amendment" and therefore did not abrogate Eleventh Amendment immunity.

*Doe v. Nebraska*, 345 F.3d 593, 600–01 (8th Cir. 2003). As we stated in *Alsbrook*,

> it cannot be said that in applying Title II of the ADA to the states, Congress has acted to enforce equal protection guarantees for the disabled as they have been defined by the Supreme Court. We find therefore, that the extension of Title II of the ADA to the states was not a proper exercise of Congress's power under Section 5 of the Fourteenth

> Amendment. Consequently, there is no valid abrogation of Arkansas'
> Eleventh Amendment immunity from private suit in federal court and
> the district court lacked subject matter jurisdiction over the ADA claim.

*Alsbrook*, 184 F.3d at 1010. Subsequently, the Supreme Court overturned Congress's attempted abrogation of sovereign immunity to claims for violations of Title I of the ADA in *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356 (2001). The plaintiffs in that case filed suit against various state defendants, seeking money damages for a violation of Title I of the ADA. *Id.* at 362. On review, the Supreme Court ruled that, although "Congress may subject nonconsenting States to suit in federal court when it does so pursuant to a valid exercise of its § 5 power," "Congress' § 5 authority is appropriately exercised only in response to state transgressions." *Id.* at 364, 368. The Court found that the "legislative record of the ADA . . . simply fails to show that Congress did in fact identify a pattern of irrational state discrimination in employment against the disabled." *Id.* at 368. Consequently, the Court held that the Eleventh Amendment bars Title I ADA claims for money damages brought by state employees in federal court. *See Faibisch v. Univ. of Minn.*, 304 F.3d 797, 800 (8th Cir. 2002) ("In . . . *Garrett* . . . , the Supreme Court ruled that a state is immune from suit under Title I of the ADA unless it waives its sovereign immunity.").

Here, Lors asserts a retaliation claim under Title V of the ADA that is premised on alleged prior discrimination under Title I of the ADA.

> Neither the Supreme Court nor the Eighth Circuit has addressed whether
> Title V is valid abrogation of state sovereign immunity. However, other
> courts have concluded that the Supreme Court's holding in *Garrett*
> "necessarily applies to claims brought under Title V [when] the claims
> are predicated on alleged violations of Title I." *Demshki v. Monteith*,
> 255 F.3d 986, 988 (9th Cir. 2001); *see also Reed v. College of the*
> *Ouachitas*, No. 6:11CV6020, 2012 WL 1409772, *5 (April 23, 2012
> W.D. Ark.) (noting that Supreme Court precedent supports a conclusion

that Congress may not abrogate the states' Eleventh Amendment immunity from claims brought pursuant to Title V of the ADA); *Morr v. Missouri Dept. of Mental Health*, No. 4:08CV359 RWS, 2009 WL 1140108, *4 (April 28, 2009 E.D. Mo.) (finding Title V claim for damages barred by the Eleventh Amendment).

*Tinzie v. Ark. Dep't of Workforce Servs.*, No. 4:11CV00683 SWW, 2012 WL 1739859, at *3 (E.D. Ark. May 16, 2012) (alteration in original). Shortly after the Supreme Court issued *Garrett*, the Ninth Circuit issued its opinion in *Demshki*. The plaintiff in *Demshki* was fired from his new position with the California Senate Rules Committee after voicing his concern that the Rules Committee violated disability law in declining to hire a fellow campaign worker who spoke with a speech impediment. 255 F.3d at 987. The plaintiff filed suit, alleging retaliation, in violation of Title V of the ADA. *Id.* at 988. The Ninth Circuit found that sovereign immunity protected the Rules Committee from the plaintiff's ADA retaliation claim and directed the district court to dismiss it. *Id.* at 989. The court stated:

> There is nothing in the ADA's legislative findings demonstrating a pattern of discrimination by states against employees who oppose unlawful employment discrimination against the disabled. Absent a history of such evil by the states, Congress may not abrogate the states' Eleventh Amendment immunity from Title V claims. *See Garrett,* 121 S. Ct. at 967–68.

*Id.* The Ninth Circuit recognized that the Supreme Court's holding in *Garrett* "necessarily applies to claims brought under Title V of the ADA, at least where, as here, the claims are predicated on alleged violations of Title I." *Id.*

> Several district courts have agreed with the Ninth Circuit's reasoning in *Demshki*, and relied on the decision to support the holding that a Title V claim was barred by the ADA. *See, e.g.*, *Tinzie v. Arkansas Dep't of Workforce Servs.*, No. 4:11CV00683, 2012 WL 1739859, at *3 (E.D.

Ark. May 16, 2012); *Reed v. Coll. of the Ouachitas*, No. 6:11-CV-6020, 2012 WL 1409772, at * 5 (W.D. Ark. Apr. 23, 2012); *Collazo-Rosado v. Univ. of Puerto Rico*, 775 F. Supp. 2d 376, 386–87 (D.P.R. 2011); *Morr*, 2009 WL 1140108, at *4; *but see Villanueva-Cruz v. Puerto Rico*, No. CIV. 10-2075, 2012 WL 1712691, at * 6 (D.P.R. May 15, 2012).

*Merbach v. N. Dakota State Water Comm'n*, No. 1:13-CV-030, 2013 WL 2252916, at *3 (D.N.D. May 22, 2013).

*Demshki*, however, was decided prior to the Supreme Court's decisions in *Lane* and *Georgia.* And, as explained *supra*, "[n]either the Supreme Court nor the Eighth Circuit has addressed whether Title V is valid abrogation of state sovereign immunity." *Tinzie*, 2012 WL 1739859, at *3.

"In *Lane*, the Court held that *Title II* of the ADA was a valid abrogation of sovereign immunity as applied to claims that disabled people were being denied the fundamental right of access to court proceedings." *Klinger v. Dir., Dep't of Revenue, State of Mo.*, 455 F.3d 888, 891 (8th Cir. 2006) (emphasis added) (citing *Lane*, 541 U.S. at 531). In *Georgia*,

the Court considered the claims of a disabled inmate who alleged that he was denied accommodation during his imprisonment by the state. *Georgia*, 126 S. Ct. at 879. The inmate claimed that the conditions of his incarceration violated not only the ADA, but also his eighth amendment right to be free from cruel and unusual punishment (a right made applicable to the states by the due process clause of the fourteenth amendment). The Supreme Court said that there was no doubt that Congress can abrogate sovereign immunity for conduct that actually violates the fourteenth amendment. *Georgia,* 126 S. Ct. at 881–82. But since the inmate's claims still had to be fleshed out in the district court, the Supreme Court remanded the case "to determine . . . *on a claim-by-claim basis*, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the

Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Id*. at 882 (emphasis added).

*Id*. at 891–92 (quoting *Georgia*, 546 U.S. at 159); *see also Johnson v. Neiman*, 504 F. App'x 543, 545 (8th Cir. 2013) (unpublished per curiam) (citing *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 552–53 (3d Cir. 2007) (stating that, under *Georgia*, court must "(1) identify which aspects of the State's alleged conduct violated Title II; (2) identify to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, determine whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid")).

In their supplemental briefing, both parties agree that the *Georgia* framework applies to the present case to determine, if necessary, whether *Title V* of the ADA was a valid abrogation of sovereign immunity. We agree. As with Title II in *Georgia*, the constitutional question of whether Title V of the ADA was a valid abrogation of sovereign immunity may be avoided altogether if the district court correctly determined that the retaliation claim fails on the merits. *Cf. Johnson*, 504 F. App'x at 545.

Under *Georgia*, we need not determine whether Title V of the ADA was a valid abrogation of sovereign immunity if the record on summary judgment establishes that Lors has no valid Title V claim against the defendants. *Cf. id*. at 545 ("[W]e need not address whether the district court properly determined that MDOC was entitled to sovereign immunity on the ADA Title II claim. This is because there was insufficient evidence in the record to support the Title II claims.") (citing *Schoelch v. Mitchell*, 625 F.3d 1041, 1045–46 (8th Cir. 2010) (summary judgment may be affirmed on any basis supported by record); *Buchanan v. Maine*, 469 F.3d 158, 172–73 (1st Cir. 2006)

(court should not reach Eleventh Amendment immunity issue if summary judgment record established no Title II claim against State); *Hale v. King*, 642 F.3d 492, 498 (5th Cir. 2011) (per curiam) (declining to decide whether *Georgia* prohibits court from addressing validity of ADA Title II's abrogation of immunity without first deciding that claimant's allegations actually state claim for relief under Title II, because appellate court was well suited to apply Fed. R. Civ. P. 12(b)(6) standard to allegations in support of Title II claims)).

Here, Lors argues that the district court erroneously stopped at "Step One" of the *Georgia* framework by determining that his retaliation claim failed on the merits. Relying on arguments that he previously made in his opening and reply briefs, Lors asserts that direct evidence exists showing a causal link between his termination and the filing of the ADA discrimination claim; alternatively, he argues that his retaliation claim survives the *McDonnell-Douglas* burden-shifting analysis.

A. *Direct Evidence*

Lors must provide "either direct evidence of discrimination or create an inference of it under the *McDonnell Douglas* burden-shifting framework" to defeat the defendants' motion for summary judgment on his retaliation claim. *Young-Losee v. Graphic Packaging Int'l, Inc.*, 631 F.3d 909, 912 (8th Cir. 2011) (citation omitted); *see also Stewart v. Ind. Sch. Dist. No. 196*, 481 F.3d 1034, 1042–43 (8th Cir. 2007) ("Without direct evidence of a retaliatory motive, we analyze retaliation claims (whether under Title VII, the ADA, or the ADEA), under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed .2d 668 (1973).").

"Direct evidence of retaliation is evidence that demonstrates a specific link between a materially adverse action and the protected conduct, sufficient to support a finding by a reasonable fact finder that the harmful adverse-action was in retaliation for the protected conduct." *Young-Losee*, 631 F.3d at 912 (citation omitted). By

"direct" evidence, we mean "the causal strength of the proof, not whether it is 'circumstantial' evidence." *Id*. (quoting *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004)). We have found, for example, "direct evidence that [an employee] was terminated in retaliation for filing a formal complaint of harassment" where a plant supervisor "wadded up [the employee's] complaint, called it 'total bullshit,' threw it in the garbage can, told [the employee] to leave, and said he never wanted to see [the employee] again." *Id*.

Lors argues that the following four pieces of evidence satisfy his burden of producing direct evidence of retaliation to withstand summary judgment: (1) his termination during the pendency of the appeal to this court of his ADA discrimination claim; (2) an email from his team leader, Dan Houck, to his supervisors in which Houck expressed suspicion that Lors would use recordings in an attempt to make a new hostile work environment claim and in which Houck expressed interest in taking action "to beat [Lors] to" filing such claim; (3) emails involving Houck and Lors's supervisors regarding Lors that were filed in a category entitled "New Lawsuit"; and (4) Lors's termination letter, which stated the reasons for his termination, including, "[a]mong other things, you continue to challenge the lateral transfer that took place in October 2004." The district court concluded that none of the aforementioned evidence constitutes "direct evidence" of discrimination. We agree.

Lors was terminated within two years after he commenced the ADA discrimination case and during the pendency of his appeal to this court. "Generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine issue of fact on retaliation." *Sisk v. Picture People, Inc.*, 669 F.3d 896, 900 (8th Cir. 2012) (quotation and citation omitted). Temporal proximity between the protected conduct and adverse action "must be very close" for timing alone to be sufficient. *Id*. (quotation and citation omitted). Although we have refrained from "draw[ing] a definitive line," we have recognized that "[m]ore than two months is too long to support a finding of causation

without something more." *Id*. at 901 (citing *Smith v. Fairview Ridges Hosp*., 625 F.3d 1076, 1088 (8th Cir. 2010) (finding one month is not close enough); *Wisbey v. City of Lincoln*, 612 F.3d 667, 676 (8th Cir. 2010) (same); *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 833 (8th Cir. 2002) ("[The employee's] family leave began on January 1 and [the employer] discharged [the employee] on January 14. These two events are extremely close in time and we conclude that under our precedent this is sufficient, but barely so, to establish causation, completing [the plaintiff's] prima facie case.")).

Lors also points to Houck's emails as direct evidence of retaliation. After Lors's transfer in November 2004, which Lors believed was because of his employer's animus toward his status as a person with a disability, he was assigned to a team that Houck led. In 2004 and 2005, Lors secretly made audio recordings of several of his coworkers, including Houck.[5] In April 2007, Lors filed suit against the defendants, claiming that he was discriminated against because of his diabetes, in violation of the ADA. In response to discovery requests in that case, Lors produced the audio recordings; in 2007, some of Lors's coworkers learned of the secretly recorded conversations with them, which caused some at BIT to distrust Lors.

On September 3, 2008, BIT formally reprimanded Lors for failing to follow one of Houck's directives and for being disrespectful to Houck in Lors's communications concerning the directive. Lors responded in writing to the formal reprimand in which he referred to Houck's emails as "absurd and taunting" and expressed his belief that Houck was failing in his duties.

On December 15, 2008, the district court granted summary judgment for the defendants on Lors's ADA discrimination claim. Then, on December 17, 2008, Houck

---

[5]In January 2009, the State of South Dakota adopted a policy prohibiting its employees from using recording devices, unless authorized as part of their job duties. Prior to this time, no formal policy existed.

sent an email to his supervisors, expressing his mistrust of Lors and forecasting that Lors would claim a hostile work environment. The email reads, in relevant part:

> Speaking of which, is there anything we can do with BOP [Bureau of Personnel] on the hostile work environment front? I know I had put in a few declarations of him creating one but of course nothing could be done then—I just wanted it on record at the time. I can almost guarantee that he is going to take his recording he has made since the last ones and use them against us to prove that he is in a hostile work environment and I would like to beat him to that. If something needs to be signed or anything, I know I can get signatures from people . . . .

Our court has previously recognized that

> "[n]ot every prejudiced remark made at work supports an inference of illegal employment discrimination." *Rivers–Frison v. Southeast Mo. Cmty. Treatment* Ctr., 133 F.3d 616, 619 (8th Cir. 1998). "We have carefully distinguished between comments which demonstrate a discriminatory animus in the decisional process or those uttered by individuals closely involved in employment decisions, from stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process." *Id.* (internal quotations, citations, and alteration omitted).

*Arraleh v. Cnty. of Ramsey*, 461 F.3d 967, 975 (8th Cir. 2006).

In the present case, Houck is not a decisionmaker who determined whether Lors would be terminated. In an email on March 11, 2009, Lors acknowledged that "Dan Houck is not management." Moreover, when read in context, Houck was *not* advocating for Lors's *termination* in retaliation for filing the ADA discrimination claim; instead, he was suggesting that a *preemptive claim* be made against Lors for creating a hostile work environment.

Lors also points to emails involving Houck and Lors's supervisors regarding Lors that were filed in a category entitled "New Lawsuit." But our review of the record shows that the emails included in this category extend back to 2001, well before Lors filed his first ADA discrimination lawsuit. This category of emails does not provide a specific link between Lors's termination on April 23, 2009, and his filing of the ADA discrimination lawsuit in April 2007.

Finally, Lors's termination letter does not provide direct evidence of discrimination. Lors isolates the following section of the letter in arguing that he has shown direct evidence of discrimination, "You continue to challenge authority and want to debate decisions that are made by others in your chain of command. Among other things, you continue to challenge the lateral transfer that took place in October 2004." But Lors omits another relevant portion of the letter, which demonstrates the lack of any specific link between his termination and his ADA discrimination lawsuit:

> It is important to note that this action has nothing to do with the Americans with Disabilities Act claim that you filed against me [Jim Dean, Computer Support Manager,] and various other state employees that was dismissed by the U.S. District Court. As you admitted in one of the briefs you filed with the District Court, your lateral transfer had nothing to do with your diabetes. (Specifically, you alleged that it was the result of "one politically-motivated complaint.") Rather, this action is the result of the continuation of the disruptive and insubordinate behavior that led to your lateral transfer despite several opportunities to change your attitude and behaviors.

Lors has failed to provide any direct evidence of retaliation.

## B. *Pretext*

Because Lors has failed to produce direct evidence of a retaliatory motive, we analyze his ADA retaliation claim under *McDonnell Douglas*. *Stewart*, 481 F.3d at 1042–43.

-15-

Under this framework, the initial burden is on the plaintiff to establish a prima facie case, consisting of evidence: "(1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events." *Green* [*v. Franklin Nat'l Bank of Minneapolis*], 459 F.3d [903,] 914 [(8th Cir. 2006)]. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to show a "non retaliatory reason for the adverse employment action." *Id.* (quotation marks omitted). If the defendant can show a legitimate, non-retaliatory reason for its actions, the burden returns to the plaintiff who "is 'then obliged to present evidence that (1) creates a question of fact as to whether [defendant's] reason was pretextual and (2) creates a reasonable inference that [defendant] acted in retaliation.'" *Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 880 (8th Cir.2005) (quoting *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 833 (8th Cir. 2002)).

*Id.* at 1043.

In the present case, even if we assume that Lors has proven a prima facie case of retaliation, he has failed to demonstrate that the defendants' legitimate, non-discriminatory reason for his termination—failure to comply with the requirements of the WIP—was pretextual.

To withstand summary judgment on his ADA retaliation claim, Lors

may demonstrate [a] material issue regarding pretext by (1) indirect evidence showing that [the] employer's proffered explanation is unworthy of credence because it has no basis in fact, or (2) persuading [the] court that [a] prohibited reason likely motivated [the] employer, which is dependent on showing sufficient evidence of intentional retaliation exists for [a] jury to believe plaintiff's allegations . . . .

*Walker v. Ark. Dep't of Cmty. Corr.*, 436 F. App'x 729, 729 (8th Cir. 2011) (unpublished per curiam) (citing *Wallace v. DTG Operations, Inc.*, 442 F.3d 1112

(8th Cir. 2006), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011)). "The first route, directly rebutting the proffered reason as false, usually involves more than a rebuttal of the employer's ultimate claims regarding its subjective motivations. It typically involves a broader rebuttal of the employer's underlying factual claims." *Wallace*, 442 F.3d at 1120 (citation omitted). Under the second route, the plaintiff need not "disprov[e] the underlying factual claims of the employer"; instead, the second route "focuses . . . on rebuttal of the employer's ultimate factual claim regarding the absence of retaliatory intent." *Id*. at 1121 (citations omitted). "In effect, a plaintiff may concede that the proffered reason, if truly the motivating cause for the termination, *would have been* a sufficient basis for the adverse action while arguing that the employer's proffered reason was not the true reason for the action." *Id*. (citation omitted).

Lors argues that he produced sufficient evidence of pretext to rebut the defendants' non-retaliatory reason for his termination. Lors does not argue that the proffered explanation for his termination is unworthy of credence; instead, he argues that the employer's proffered reason was not the true reason for his termination. According to Lors, he demonstrated that the defendants' reason for his termination was pretextual based on (1) "an inexplicable year long gap between the disclosures of the tape recordings in 2007 in the ADA [discrimination] suit and the disciplinary fury about the tape recordings after the District Court dismissed the lawsuit in December 15, 2008," and (2) "evidence that a similarly situated employee—Houck—was involved in the rude, unprofessional[,] and counter-productive behaviors," i.e., "the same behavior that the[] decision makers were disciplinary and terminating Lors for."

We agree with the district court that

Lors's evidence and explanations are not sufficient as a matter of law to create a genuine issue of material fact as to whether the employer's

-17-

proffered reasons were pretextual or create an issue of fact on that subject, especially when the findings of two state tribunals have found preclusive effect that there was cause for BIT to discipline Lors and terminate Lors's employment apart from the ADA claim.

*Lors*, 2012 WL 2970492, at *8.

The CSC found that the BIT terminated Lors's employment for cause and that "[t]here is no credible evidence that any of the disciplinary actions taken by BIT were a result of or related to the commencement or continuation by Lors of the ADA Case." In affirming the CSC's factual findings and determination, the Sixth Judicial Circuit Court of South Dakota found

that the record contains a sufficient factual basis to support the CSC's findings that [Lors] disrupted the efficiency and morale of the department and failed to obey directions from his supervisors. Moreover, the Court [found] as a matter of law that [Lors's] conduct was insubordinate. Consequently, [the BIT] was legally justified taking disciplinary action against [Lors].

Lors has not overcome the independent conclusions of the CSC, Sixth Judicial Circuit Court of South Dakota, and Unemployment Insurance Appeals Division that cause existed for BIT to terminate Lors's employment and that no credible evidence exists that the BIT terminated Lors in retaliation for his ADA discrimination claim.

III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____