# United States Court of Appeals
### For the Eighth Circuit

_____

No. 15-1300

_____

Herman L. Hutton

*Plaintiff - Appellant*

v.

Danny Maynard, Sr., Mayor, Individually and as Mayor of the City of England, Arkansas; Lenny Abrams; Peggy Baker; Rick Douglas; Dearl Frizzell; Mary Givens; Bill Newton; Jeremy Nutz; Dudley Webb, Jr.; City of England, Arkansas

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: September 23, 2015
Filed: February 3, 2016

_____

Before WOLLMAN, COLLOTON, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Herman Hutton brought claims pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., and 42 U.S.C. §§ 1981, 1983, and pursuant to state law, alleging that he was terminated as Chief of Police of England, Arkansas, in retaliation for his

desire to promote an African American staff member at the police department, in retaliation for his preaching off-duty as an ordained Baptist minister, and because the City wanted to replace him with someone younger. The district court[1] granted summary judgment in favor of the defendants on all of Hutton's federal claims and dismissed his state law claim of wrongful discharge without prejudice. On appeal, Hutton challenges only the dismissal of the retaliation claim[2] based on his desire to promote an African American staff member.[3] We have jurisdiction pursuant to 28 U.S.C. § 1291 and, finding no error, we affirm.

## I. Background

Hutton, a white man, began working as the Chief of Police for the City of England, Arkansas, on August 6, 2007. In 2009, Hutton began preaching as a Baptist minister on his days off. In 2012, local residents complained about a community meeting Hutton led that they thought had too much religious emphasis and felt like a church service. The Mayor of England, Danny Maynard, asked Hutton to focus on city matters during community meetings and when on-duty.

---

[1]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

[2]In his statement of the case, Hutton states that he also appeals the dismissal of his state law wrongful discharge claim, but he offers no argument in support of reversal and therefore we do not address this issue. See BLB Aviation S.C., LLC v. Jet Linx Aviation, LLC, 748 F.3d 829, 838 n.4 (8th Cir. 2014).

[3]It is unclear whether Hutton also attempted to assert a claim of associational race discrimination separate and distinct from his claim that he was terminated in retaliation for seeking to promote an African American staff member. Even if he did, our analysis would not change. Hutton's desire to promote an African American is the only "association" he asserts and is the only purported statutorily protected activity at issue.

Hutton also experienced conflict with the City over certain firearms certifications. Hutton was responsible for ensuring the certification of his officers. As of September 19, 2012, the date on which Hutton was terminated, Hutton's officers were not up-to-date on their firearms certifications and had not been firearms-certified for over two years, from June 2010 to September 2012. According to Hutton, this was due to a shortage of ammunition. The City countered that, had Hutton brought the issue to the City Council's attention, the Council would have provided the necessary extra funds for ammunition.

Concerned community members also sent other complaints to Maynard about Hutton and his department's performance. For example, the Director of the Housing Authority complained that no officer had responded to a crime that occurred at the Housing Authority. A local businessman also complained that Hutton's officers targeted one of his employees to give him a ticket. According to Hutton, the ticket was for a legitimate traffic stop.

At some point, Hutton also became aware of a dent in the fender of his new department-issued Tahoe. Maynard asked him to repair it, but he failed to do so. Hutton also exceeded the City's budget when purchasing dashboard video cameras pursuant to a federal grant, and he did not return one camera to the vendor as instructed. After Hutton had been asked five times whether the camera had been sent back and he had still failed to return it, the issue, according to Maynard, became "the straw that broke the camel's back" and Maynard decided to terminate Hutton.

The day before Hutton was terminated, he informed Maynard that he wanted to promote Brenda Parks, an African American staff member. Maynard told Hutton, "You do whatever you think is right, Chief." While Parks did not receive the promotion immediately because the city eliminated the intended job, she was not fired and she remained in her previous position. The intended position was then

consolidated with another position within the department, and Parks was promoted to the new position. She is currently the department's head dispatcher.

Hutton alleged that Maynard and Maynard's friends,[4] including a City Council member, openly displayed racially discriminatory animus towards African American citizens of the city. Hutton said that they referred to African American citizens with terms such as "those people," "them people," and "the people from the other side of the tracks." One of Maynard's friends used the "n-word" and, according to Hutton, Maynard took no offense at the use of the term.

After he was terminated, Hutton appealed the decision to the City Council, requesting reinstatement. At the City Council meeting, no one, including Hutton, mentioned Hutton's attempt to promote Parks or his religious activities. The Council's process is unclear, but in any case the Council had an executive session at which they voted to not reinstate Hutton. At the session, Maynard provided the members with information about at least two terminable offenses—the firearms certification and camera issues—as well as his view that Hutton had neglected some of his job duties.

Only one Council member voted to reinstate Hutton, and she did so because Maynard failed to offer any documentation to support his allegations about Hutton's shortcomings. Later, a second Council member said she felt somewhat misled by Maynard about the extent of Hutton's problems on the job. All Council members who were asked agreed, however, that the subject of Hutton's desire to promote Parks was never raised or discussed during the executive meeting. Moreover, none of the Council members disputed that there were complaints about Hutton's job performance, that Hutton had failed to ensure his officers were firearms-certified, or

---

[4]Affidavits and the parties' briefings repeatedly refer to the speakers as "Maynard's friends" with little additional specificity or clarification.

-4-

that Hutton had failed to return a camera and get his department-issued vehicle repaired as instructed.

## II. Discussion

We review the district court's grant of summary judgment de novo, viewing the facts in the light most favorable to Hutton, the non-moving party. Sprenger v. Fed. Home Loan Bank of Des Moines, 253 F.3d 1106, 1110 (8th Cir. 2001).

### A. Exhaustion

"Title VII requires that before a plaintiff can bring suit in court to allege unlawful discrimination, [he] must file a timely charge with the EEOC or a state or local agency with authority to seek relief" on his behalf. Richter v. Advance Auto Parts, Inc., 686 F.3d 847, 850 (8th Cir. 2012); see 42 U.S.C. § 2000e-5(e)(1). The charge must be filed with the EEOC or other agency within 180 days "after the alleged unlawful employment practice occurred," and give notice to the employer of the circumstances of "the alleged unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1). The district court noted that Hutton failed to exhaust his administrative remedies as to his Title VII retaliation claim, but proceeded to decide the claim on the merits because the City failed to "address the issue of exhaustion."

On appeal, the City asserts that Hutton's claim should be dismissed because he failed to exhaust his administrative remedies. Hutton concedes that he failed to exhaust his claim, but asserts that the City has waived this defense. The City notes that it raised this defense in its answer to the complaint, and argues it was not required to raise it again in its motion for summary judgment. Because we can resolve this appeal on other grounds, we leave for another day whether a defense based on a failure to exhaust administrative remedies may effectively be waived.

Like the district court, we conclude that the better approach in this case is to address the merits of Hutton's claim.

### B.      Retaliation Claim

To survive a motion for summary judgment on a retaliation claim, Hutton either must offer direct evidence of retaliation or create an inference of retaliation under the McDonnell Douglas burden-shifting framework. Lors v. Dean, 746 F.3d 857, 865 (8th Cir. 2014) (citing Young-Losee v. Graphic Packaging Int'l, Inc., 631 F.3d 909, 912 (8th Cir. 2011)). Direct evidence of discrimination must show "a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." Russell v. City of Kansas City, 414 F.3d 863, 866 (8th Cir. 2005). Direct evidence encompasses comments or statements indicating discriminatory intent, where those comments are made by people with decision-making authority. See Moody v. Vozel, 771 F.3d 1093, 1096 (8th Cir. 2014). "By 'direct' evidence, we mean 'the causal strength of the proof, not whether it is "circumstantial" evidence.'" Lors, 746 F.3d at 865 (quoting Griffith v. City of Des Moines, 387 F.3d 733, 736 (8th Cir. 2004)). Strong circumstantial evidence may also constitute direct evidence. Griffith, 387 F.3d at 736. If there is no direct evidence and an inference is required, the familiar three-step burden-shifting analysis from McDonnell Douglas applies. See Ellis v. Houston, 742 F.3d 307, 319 (8th Cir. 2014) (retaliation claims "analyzed under the same McDonnell Douglas burden shifting framework as Title VII claims").

The district court determined that evidence of Maynard and his friends referring to African American people with derogatory language did not constitute direct evidence of a racially discriminatory animus because Hutton provided no context or time-frame in which the remarks were allegedly made. Moreover, Hutton did not demonstrate any specific link between the alleged remarks and his

termination. On appeal, Hutton does not point to any additional direct evidence. Instead, he relies in large part on Beshears v. Asbill, in which a decision-maker commented that older employees had problems with adaptation and flexibility, and the comments were "made during the decisional process by individuals responsible for the very employment in controversy." 930 F.2d 1348, 1354 (8th Cir. 1991). Hutton offers no such employment-related statements by a decision-maker here. We therefore agree with the district court that Hutton has failed to establish direct evidence of retaliation.

To proceed under the indirect method of proof, Hutton must initially show that he engaged in statutorily protected conduct, that he suffered an adverse employment action, and that a causal connection exists between the two. Fiero v. CSG Sys., Inc., 759 F.3d 874, 880 (8th Cir. 2014). The district court assumed that Hutton had engaged in statutorily-protected conduct by associating with and seeking to promote an African American staff member. The court also concluded that Hutton's termination constituted an adverse employment action. The court ruled, however, that Hutton had failed to identify any causal connection between his desire to promote an African American staff member and his termination, and had therefore failed to establish a prima facie case of retaliation. The court concluded alternatively that Hutton failed to demonstrate that the reasons given for his termination were pretextual. See id. at 880 (once prima facie case established and nondiscriminatory reason offered, burden shifts back to plaintiff to establish pretext and a reasonable inference of retaliation).

Because the district court proceeded to an analysis of pretext on the motion for summary judgment, we conclude it is unnecessary to address whether Hutton established a prima facie case under the McDonnell Douglas framework. See Johnson v. Ready Mixed Concrete Co., 424 F.3d 806, 810 (8th Cir. 2005) (citing U.S. Postal Serv. Bd. of Governors v. Aiken, 460 U.S. 711, 715 (1983)). Hutton does not dispute that defendants offered a legitimate, non-discriminatory reason for his

termination. We therefore turn directly to pretext to determine whether there is a genuine issue of fact for trial on the question of retaliation.

In order to succeed, Hutton must both discredit defendants' asserted reasons for his termination and show that the circumstances permit drawing a reasonable inference that the real reason for his termination was retaliation. Gilbert v. Des Moines Area Cmty. Coll., 495 F.3d 906, 918 (8th Cir. 2007). Evidence of pretext and retaliation "is viewed in light of the employer's justification." Logan v. Liberty Healthcare Corp., 416 F.3d 877, 881 (8th Cir. 2005) (alterations in original).

Hutton claims his termination was a direct result of his desire to promote Parks and that the temporal proximity of the two events shows causation. Temporal proximity alone is insufficient to show that an employer's proffered reason for action was a pretext for discrimination, Gibson v. Geithner, 776 F.3d 536, 541 (8th Cir. 2015), but Hutton offers several arguments, in addition to temporal proximity, to support his assertion that defendants' rationale for his termination was pretextual. First, Hutton asserts that Maynard's reasons for his firing shifted over time. See Wierman v. Casey's Gen. Stores, 638 F.3d 984, 995 (8th Cir. 2011) ("Substantial changes over time in the employer's proffered reason for its employment decision support a finding of pretext.") (quoting Smith, 302 F.3d at 835). He points to the Council member who felt Maynard may have misled her regarding the extent of Hutton's problems as Chief of Police. But Hutton does not allege that Maynard offered different reasons to the City Council for the termination than he provided to any other person at any other time; and the Council member at issue did not dispute that the Council was presented with information about the firearms certification, the dashboard cameras, and a general statement that Hutton was neglecting some of his job duties. Indeed, Hutton himself agrees that the firearms certification and camera issues—two key reasons Maynard provided for terminating Hutton—could have "shake[n] [his] boss' faith" in him and led to his firing. While Hutton had an explanation for the firearms certification problem, he admits that it was his

responsibility to make sure officers were certified, that the officers were not up-to-date on their firearms certifications, and that those problems, unresolved, could "open [the police department] to lawsuits." He also concedes that community members made complaints to Maynard about his job performance. Hutton may have disagreed with Maynard's reasons for firing him, but there is no evidence that those reasons changed or shifted over time.

Second, Hutton attempted to provide comparator evidence of individuals similarly situated to him. See Ebersole v. Novo Nordisk, Inc., 758 F.3d 917, 925 (8th Cir. 2014) (explaining that one of multiple ways to prove pretext is to show "that similarly situated employees who did not engage in the protected activity were treated more leniently") (quoting Phillips v. Mathews, 547 F.3d 905, 913 (8th Cir. 2008)). Yet, as the district court noted, Hutton offered nothing more than names, providing no explanation as to why or how the named individuals were in any way similarly situated such that they should be considered valid comparators. Id. (holding that "comparators" must be "similarly situated in all relevant respects") (quoting Burton v. Ark. Sec'y of State, 737 F.3d 1219, 1229 (8th Cir. 2013)). Such skeletal assertions are insufficient to prove pretext.

Finally, Hutton asserts that Maynard's use of and tolerance for racist language reflects a bigoted attitude that is sufficient to prove pretext. Perhaps a decision-maker's general discriminatory attitude toward a particular race or group of people as evidenced by derogatory comments or the expression of bigoted views would, under some circumstances, be sufficient to defeat a motion for summary judgment at the pretext stage. But Hutton does not allege that the offensive statements in this case were made in connection with any part of his employment, or in connection with city business of any kind. Nor is it alleged that these statements were made near the time of Hutton's decision to promote Parks or the time of his termination. Free-standing racist comments are deplorable in their own right. But in this case, the comments Maynard and his friends made to one another, untethered as they were from the

adverse employment action at issue, do not prove that the reasons for Hutton's termination as Chief of Police were pretextual.

### III. Conclusion

We affirm the judgment of the district court.

_____